**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Antoine David TOATLEY,**
**Defendant–Appellant.**

**No. 99–1789.**

United States Court of Appeals,
Sixth Circuit.

Jan. 17, 2001.

Before MARTIN, Chief Judge,
NORRIS, Circuit Judge, and
FORESTER, District Judge.*

---

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

FORESTER, District Judge.

Defendant Antoine D. Toatley appeals the district court's denial of his motion to dismiss certain indictments against him. For the following reasons, we AFFIRM.

## I.

On December 15, 1998, the grand jury returned a four count indictment charging the defendant, Antoine Toatley, with two counts (Counts I and II) of felon in possession of a firearm, 18 U.S.C. § 922(g), and two counts (Counts III and IV) of inducing the making of a false statement in the acquisition of a firearm, 18 U.S.C. § 922(a)(6). On February 1, 1999, the defendant moved to dismiss the indictment because his previous conviction was not a felony as clearly required under 18 U.S.C. § 922(g). Shortly thereafter, the government filed a motion and a proposed order voluntarily dismissing Counts I and II. The district court endorsed the government's proposed order, thereby dismissing Counts I and II because the defendant was not a felon.

On February 19, 1999, Toatley filed a Rule 51 objection to the district court's order dismissing Counts I and II. The defendant argued that the grand jury was unduly influenced by incorrect testimony regarding his felon status and therefore indicted him on the companion charges of inducing the making of a false statement in the acquisition of a firearm. The district court, construing the Rule 51 objection as a motion for reconsideration, denied the motion, holding that the assertion of undue influence was not supported by law or fact. The district court noted in its opinion that Counts I and II were unrelated to Counts III and IV in that felon status was not a

prerequisite to inducing the making of a false statement in the acquisition of a firearm.

On March 16, 1999, the jury convicted the defendant on both counts of inducing the making of a false statement in the acquisition of a firearm. After sentencing, the defendant filed a notice of appeal. Although the notice of appeal was untimely, the district court extended time to appeal and the matter is now before this Court.

### A.

Except where noted, the following facts are virtually undisputed. In April of 1997, Jacqueline Smith met Antoine Toatley while paying traffic tickets at the district court in Oak Park, Michigan. The two exchanged phone numbers and some time thereafter, Toatley asked Smith to purchase guns for him.[1] Toatley explained to Smith how to get the necessary licenses, purchase the firearms, then file a false police report saying they were stolen so the guns would not be traced back to her. Smith was apprehensive at first, but after Toatley informed her that she would not get in trouble and that he would compensate her with cash or designer hand bags, she agreed. Subsequently, Toatley drove Smith to the police station to acquire the requisite gun permits and then drove her to two different gun shops until they located the gun Toatley wanted. Smith purchased a three hundred dollar Ruger P–95, nine-millimeter handgun with Toatley's money.[2] In the process of purchasing the gun, Smith completed a form in which she intentionally misrepresented that she was the actual buyer of the gun. After leaving the store, she gave the handgun to Toatley, he placed it in his trunk, and she never saw it again. A few days later, Smith again purchased an identical handgun for Toatley with his money, represented that she was the gun's actual buyer, relinquished the gun to Toatley, and never saw it again.

Later, as the defendant instructed, Smith reported the guns as stolen. Two ATF agents, Mason and Averill, contacted her about her report and the stolen guns. After a brief discussion, Smith told the agents that she purchased the guns for the defendant, who she only knew as Tony. She described Toatley and gave the agents his pager number. Based upon this information, the agents subsequently identified the defendant and secured a warrant for his arrest. Two days later, the defendant turned himself in and was formally arrested on the complaint. After waiving his Miranda rights, Toatley admitted that he had asked Smith to purchase the two guns she reported as stolen.

### B.

As mentioned above, in December of 1998 the grand jury indicted Toatley on four Counts: Counts I and II charged the defendant as a felon in possession of a firearm and Counts III and IV charged him with inducing the making of a false statement in the acquisition of a firearm. Agent Averill, one of the ATF agents who investigated Toatley nearly one year before the indictment, testified before the grand jury. During the proceedings, the Assistant United States Attorney

---

**1.** Toatley later admitted that he did not purchase the guns himself because he had a previous encounter with the law and didn't think he could buy a gun.

**2.** The record conflicts on whether all of the money used to buy the first gun was the defendant's. Smith testified that the defendant gave her all of the money. The defendant asserts that he only gave her $200 for the first gun but all of the money for the second gun.

("A.U.S.A.") frequently and incorrectly referred to the defendant as a felon. When questioned by the A.U.S.A. and grand jury members, Agent Averill also stated several times that the defendant was a convicted felon.

After the grand jury indicted Toatley on all four Counts, he objected to the indictment on the ground that he was not a convicted felon. During that same time, the A.U.S.A. involved in the grand jury proceeding was also able to confirm that Toatley was not a convicted felon. Accordingly, the government submitted a proposed order dismissing the first two Counts for felon in possession of a firearm. The district court dismissed Counts I and II and Toatley objected, claiming that the entire indictment should be dismissed as the grand jury was unduly influenced by the A.U.S.A.'s and the ATF agent's comments regarding the defendant's felon status during the grand jury proceeding. The district court denied the defendant's objection or motion and Toatley subsequently was convicted of two counts of inducing the making of a false statement in the acquisition of a firearm. Toatley appeals the district court's denial of his motion to dismiss all counts in the indictment.

## II.

■ The question before this Court is whether the district court's denial of Toatley's motion to dismiss a grand jury indictment constituted an abuse of discretion where grand jury testimony incorrectly referred to the defendant as a felon. *See United States v. Breitkreutz*, 977 F.2d 214, 217 (6th Cir.1992) (reciting abuse of discretion as the standard for reviewing a district court's refusal to dismiss an indictment); *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir.1990), *cert. denied*, 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990) (same). In *Bank of Nova Sco-*

*tia v. United States*, the Supreme Court established the standard for determining whether dismissal of an indictment due to non-constitutional errors committed during grand jury proceedings is warranted. 487 U.S. 250, 254–56, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988). According to the Court, "dismissal of the indictment is appropriate *only* if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (adopting Justice O'Connor's concurrence in *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)) (quotations omitted and emphasis added).

### A.

■ During the grand jury proceedings, the A.U.S.A. frequently and incorrectly referred to the defendant as a felon. When questioned by the A.U.S.A. and grand jury members, Agent Averill also stated several times that the defendant was a convicted felon. However, Toatley offered no evidence that the grand jury was unduly influenced by incorrect testimony regarding his felon status. This Court, will not entertain Toatley's unguided speculation that a grand jury indicted him on the companion charges of inducing the making of a false statement in the acquisition of a firearm based solely on their inquires regarding Toatley's felon status. The defendant's own admission and the evidence supporting his conviction was uncontroverted, reinforcing the fact that any errors on the part of the government during grand jury proceedings were harmless. Counts I and II were unrelated to Counts III and IV insofar as felon status was not a prerequisite to inducing the making of a false statement in the acquisition of a firearm. Overwhelming

and undisputed evidence supported the grand jury's indictment on Counts III and IV, notwithstanding the government's erroneous assertions that Toatley was a felon.

To be sure, any comments regarding Toatley's felon status during the grand jury proceeding substantially influenced the grand jury's indictment on charges of felon in possession of a firearm; being a felon is the basis of the charge. Once the district court learned that Toatley was not a convicted felon, it was self-evident that the court should dismiss Counts I and II and no hearing or lengthy opinion was necessary. Toatley does not challenge this dismissal; instead, he argues that the district court should have made factual findings addressing its decision *not* to dismiss the two counts of inducing the making of a false statement in the acquisition of a firearm. This proposition runs counter to the underlying function of the grand jury and established precedent.

■■■ The grand jury is not assigned to any governmental branch defined in the first three Articles of the Constitution; rather, "[i]t is a constitutional fixture in its own right." *United States v. Williams,* 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (*citations omitted*). The judicial branch's role in the functioning of the grand jury has been limited accordingly. *Id.* at 47–48 (discussing grand jury investigation). Furthermore, the Court is mindful of the well-accepted principle that grand jury indictments are presumed valid. *Overmyer,* 899 F.2d at 465 (*citations omitted*).

The confines established in *Bank of Nova Scotia* are designed to protect the grand jury's independence from overreaching courts. Trial courts enjoy a *presumption* that grand jury indictments are valid; they may dismiss an indictment only if it is established that a particular viola-tion substantially influenced the grand jury's decision to indict. In its order denying the defendant's Rule 51 objection construed as a motion for reconsideration, the district court reiterated that Counts I and II were dismissed based upon a stipulation that Toatley was not a felon. The court recognized that inducing the making of a false statement does not require proof of prior felon status. The defendant did not establish that the grand jury's decision to indict on charges of inducing the making of false statements was influenced by the inaccurate assertions that he was a felon. To the contrary. Toatley admitted that he induced Smith to make false statements in the acquisition of a firearm. Because indictments are presumed valid, and the law is designed to limit a trial court's ability to dismiss indictments, the district court need not further justify its decision *not* to dismiss certain counts in an indictment when those counts clearly are supported by the evidence.

### B.

Toatley asserts that the government knew during its investigation conducted prior to the indictment that he was not a felon. First, at the time of his arrest, Toatley informed the agents that he was not a felon. His assertion apparently was given little credence because, prior to his arrest, the agents reviewed Toatley's criminal history records and concluded that he had been convicted of a felony. Second, several months after this initial interaction, Agent Mason learned that Toatley was charged with a felony, but only convicted of a misdemeanor. Prior to grand jury proceedings, Agent Mason advised an A.U.S.A. that Toatley was not a felon. The attorney that Agent Mason contacted was not the attorney who handled the

grand jury proceeding.[3] There is no indication that the A.U.S.A. conducting the grand jury proceeding or Agent Averill, who testified at the proceeding, were aware that Toatley was not a felon. The communication failure by the government in this case, though certainly not endorsed, does not appear to have influenced the grand jury's decision to indict Toatley on charges unrelated to his felon status. *See Overmyer,* 899 F.2d at 465. Given the overwhelming evidence supporting Toatley's indictment, it would be inappropriate to reverse his conviction based on objectionable prosecutorial conduct; the error in this case is harmless. *See Bank of Nova Scotia,* 487 U.S. at 255.

### III.

Because the prosecutorial violation did not substantially influence the grand jury's decision to indict, and there was no grave doubt that the decision to indict was free from the substantial influence of such violations, we AFFIRM the district court's decision.

3. Three A.U.S.A.'s handled this case; one during the warrant and complaint stage, a second at the grand jury proceedings and a third during trial and sentencing.