**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0432n.06

No. 09-3599

**FILED**
**Jul 15, 2010**
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

THE GLIDDEN COMPANY,　　　　　　　**)**
　　　　　　　　　　　　　　　　　　**)**
　　　　Plaintiff-Appellee,　　　　　　**)**　ON APPEAL FROM THE UNITED
　　　　　　　　　　　　　　　　　　**)**　STATES DISTRICT COURT FOR THE
　　　　v.　　　　　　　　　　　　　　**)**　NORTHERN DISTRICT OF OHIO
　　　　　　　　　　　　　　　　　　**)**
JASON KINSELLA,　　　　　　　　　　**)**　OPINION
　　　　　　　　　　　　　　　　　　**)**
　　　　Defendant-Appellant.　　　　　　**)**
　　　　　　　　　　　　　　　　　　**)**

---

**Before:　MOORE and GILMAN, Circuit Judges; and RUSSELL, Chief District Judge.[*]**

**THOMAS B. RUSSELL, Chief District Judge.**  On June 8, 2007, Plaintiff-Appellee The

Glidden Company ("Glidden") filed a declaratory judgment action in the United States District Court

for the Northern District of Ohio against Defendant-Appellant Jason Kinsella, who asserted

counterclaims against Glidden.  The parties settled the case on May 2, 2008, but were subsequently

unable to agree upon a written memorialization of their agreement.  Ultimately, the magistrate judge

issued a report recommending the district court (1) find the May 2 settlement agreement enforceable

and (2) adopt and enforce Glidden's proposed written memorialization, with minor modifications,

as the final settlement agreement between the parties.  On March 13, 2009, the district court

overruled Kinsella's objections and accepted the magistrate judge's recommendation.  The district

---

[*]The Honorable Thomas B. Russell, United States Chief District Judge for the Western District of Kentucky,
sitting by designation.

court, on April 21, 2009, also denied Kinsella's motion to alter or amend the judgment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Glidden produces a family of multi-purpose adhesive, sealant and caulking products. Kinsella sells "Rhino Glue" on the internet, as well as at fairs and tradeshows. In early 2006, Glidden launched a new glue product named "Rhino Ultra." On July 21, 2006, Kinsella emailed Glidden regarding potential trademark infringement. Kinsella also filed trademark applications for Rhino-component marks. Glidden opposed registration of Kinsella's intent to use applications for the "Rhino Ultra" and "Rhinoultra" marks.

On June 8, 2007, Glidden filed a declaratory judgment action against Kinsella in the United States District Court for the Northern District of Ohio. Glidden asked the court to find that: (1) Glidden's "use of the term Rhino Ultra under its famous Liquid Nails house brand in connection with 'all purpose glue' and 'polyurethane glue for woodworking'" is non-infringing, (2) "Kinsella has no common law trademark rights in Rhino Ultra Glue or Rhinoultra" and (3) Glidden's "right to use the term Rhino Ultra in connection with 'all purpose household glue' and 'polyurethane glue for woodworking' is superior to Kinsella's." Kinsella asserted counterclaims against Glidden for: (1) infringement of Kinsella's trademark of Rhinofix, (2) false designation of origin and/or false description of goods, (3) violation of Ohio's Deceptive Trade Practices Act, and (4) violation of California's unfair competition law.

On May 2, 2008, the parties participated in a settlement conference before Magistrate Judge Kenneth S. McHargh. After the parties reached an oral settlement, the magistrate judge summoned

a court reporter to transcribe the essential terms of the agreement. The magistrate judge began the

recorded portion of the proceedings by stating:

> [T]he Court understands that a settlement that is acceptable to both sides has been reached. I'm going to ask my law clerk to articulate the outline of the settlement with the understanding that the parties will prepare a written memorialization with greater detail, but the essence of the settlement will be articulated by my law clerk, and I will ask counsel and the parties to indicate their assent to the terms.

The terms of the agreement were stated as follows:

(1)     "Glidden will pay [Kinsella] $150,000."

(2)     "Glidden will file a notice of abandonment of the Rhino Ultra mark."

(3)     "Glidden will remove objections to [Kinsella's] efforts to register the Rhino Ultra Glue mark and will not object in the future."

(4)     "Glidden will contact all entities of which it is aware that [have] the Rhino Ultra web presence and ask them to remove the web presence and or reference to Rhino Ultra."

(5)     "There will be no rebranding of Rhino Ultra Glue," which means that "Glidden will not use the word" Rhino or a depiction of a rhinoceros in connection with adhesives while Kinsella "is using the mark. This does not mean that Glidden is precluded from the polyurethane glue market."

(6)     "All parts of the settlement agreement will remain confidential[.]"

(7)     The parties "will have a mutual non disparagement agreement."

After the parties expressed their assent to the articulated terms, the following exchange took place

between the court, Kinsella's counsel Bruce Wilson and Glidden's counsel Christina Moser:

THE COURT:          And I'm not sure which counsel will volunteer to prepare the initial draft. I assume– who wants to do that?

MS. MOSER:          That will most likely be me.

| THE COURT: | Thank you, Ms. Moser. I'll ask you what is the anticipated time table to exchange the pleading and ultimately as to when the parties anticipate filing dismissal to the court. |
|---|---|
| MS. MOSER: | Well, what we want to do is set it contingent upon– |
| MR. WILSON: | I'd like putting it off until we do it. Do you have the details about the applications, you know, applications and all the numbers? |
| MS. MOSER: | Yeah. I have all the information. It's just a question of drafting the settlement agreement. |
| MR. WILSON: | We have no trouble communicating between working hours and later. It's a question of what you need to do. |

The magistrate judge later determined that the first "it" in Mr. Wilson's statement "I'd like putting it off until we do it" referred to filing the dismissal and the second "it" referred to drafting the settlement agreement. The minutes of the conference also reflect that the parties were to file a consent of dismissal by June 6, 2008.

The parties, however, could not agree upon a final written memorialization of the May 2 oral settlement agreement ("Agreement"). On July 25, 2008, the district court referred the case back to the magistrate judge in order to address the parties' dispute regarding memorializing the terms of the May 2 settlement conference. The magistrate judge held multiple conferences, but on September 26, 2008, the parties advised him that they had been unsuccessful in finalizing the terms of the settlement and requested the opportunity to brief the issue of the court's ability to enforce the terms of the Agreement. The magistrate judge granted the request and directed the parties to submit their respective briefs on the issue of enforceability. The parties also appeared at a hearing on October 23, 2008, to address whether "there has been a settlement reached in this matter and essentially what the terms of that settlement are."

Both parties argued that the Agreement was enforceable. Kinsella asserted that Glidden had unreasonably delayed its performance pursuant to the terms of the Agreement, and had instead proposed written agreements that incorporated additional material terms not discussed at the conference. Kinsella did not believe that a written memorialization was an essential term of the Agreement. Glidden, on the other hand, argued that the parties agreed to negotiate a written memorialization with greater detail than the terms articulated on the record, and that Kinsella breached this agreement. Glidden asked the court to enforce Glidden's proposed written memorialization of the parties' Agreement, which it attached as an exhibit ("Memorialization"). Kinsella, on the other hand, requested the court enforce the original Agreement and compel Glidden's performance.

On November 3, 2008, the magistrate judge found that the Agreement was enforceable. He further found that the Memorialization, with minor modifications, fairly and accurately reflected the parties' Agreement. The magistrate judge did not make any recommendations regarding whether either of the parties breached the Agreement.

Kinsella objected to the magistrate judge's Report and Recommendation. He again argued that a written memorialization was not an essential term of the Agreement and that Glidden was in breach of that Agreement. He further argued that the modified Memorialization materially altered the terms of the Agreement. Kinsella also moved the court to enforce the Agreement, as originally stated on May 2, 2008.

On March 13, 2009, the district court accepted the magistrate judge's recommendation. The court found the parties' Agreement enforceable as the modified Memorialization. Ten days later, on March 23, 2009, Kinsella moved to alter or amend the court's Memorandum of Opinion and

Order. On April 21, 2009, the district court denied Kinsella's motion but *sua sponte* amended its order, making a further minor modification to the Memorialization. Kinsella filed his Notice of Appeal on May 20, 2009.

## II. ANALYSIS

### A. Standard of Review

"This Court reviews for clear error the district court's factual determination that the parties had agreed to settlement terms." *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001). A factual determination is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 442, 449 (6th Cir. 2008) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

"Contract interpretation questions, however, are 'generally considered questions of law subject to de novo review.'" *Campbell v. Potash Corp. of Saskatchewan, Inc.*, 238 F.3d 792, 797 (6th Cir. 2001) (quoting *Golden v. Kelsey-Hayes, Co.*, 73 F.3d 648, 653 (6th Cir. 1996)). Specifically, as the standard applies to this case, the determination of whether a contract is ambiguous is a question of law subject to de novo review. *Id.*; *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991).

Finally, the Court reviews the district court's decision "to enforce the settlement based on its preliminary factual finding for an abuse of discretion." *Re/Max*, 271 F.3d at 645 (citing *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418 (6th Cir. 2000)). The Court will find an abuse of discretion "only when left with the 'definite and firm conviction that the court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors' or where it

'improperly applies the law or uses an erroneous legal standard.'" *Id.* (quoting *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000)).

Kinsella argues that "[d]e novo review is appropriate in this case because the district court decision was made in a summary fashion." This assertion contradicts the standard articulated in *Re/Max International v. Realty One, Inc.*, in which this Court reviewed a district court's summary enforcement of a settlement agreement. 271 F.3d at 645-46. Kinsella does not attempt to distinguish this case from *Re/Max*, nor does he address the standard of review in his reply brief. We find Kinsella's argument lacks merit.

## B. Determination that Agreement was Reached

"Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *Re/Max*, 271 F.3d at 645-46 (citing *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). Here, to determine whether an agreement was reached on all material terms, we must look to Ohio law. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (explaining that settlement agreements are governed by contract law and that Ohio law requires contracts be interpreted according to "the law of the place of the contract's making").

There is no question that the parties assented to the terms as reflected in the May 2, 2008 transcript. Neither party has ever disputed this fact. The magistrate judge noted that both parties agreed that the transcript of the May 2 settlement conference proceedings accurately reflected the Agreement's material terms and that neither party disputed the fact of settlement. The district court also noted that the parties did not dispute that the Agreement constituted an enforceable contract, nor did they dispute that the Agreement contained the terms as articulated by the transcript. Additionally, the May 2 transcript reflects that the parties assented to an outline of the "essence of

the settlement." Counsel for Kinsella stated that "[t]he terms written down by your law clerk and expressed here are the terms that we understand are the essence of the settlement, and we accept those terms." Counsel for Glidden similarly stated that "the terms as set forth by the Court are the terms acceptable to Glidden for settlement in this matter."

Ohio law, however, also requires a "meeting of the minds" before a contract may be enforced. *Scotts Co. v. Cent. Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir. 2005). As this Court has explained:

> Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time. What it does require is that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was *clear and unambiguous*.

*216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008) (emphasis added); *see also Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (Ohio 1997) ("To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear.").

Even though neither party argued that the terms of the Agreement were unclear or ambiguous, because the parties disputed what one of the terms of the Agreement meant both the magistrate judge and the district court examined this issue. Specifically, the parties disputed the meaning of the fourth term: "Glidden will contact all entities of which it is aware that has [sic] the Rhino Ultra web presence and ask them to remove the web presence and or reference to Rhino Ultra." The magistrate judge found that the parties disagreed about the language regarding Glidden's awareness– the "is aware" language– and the language regarding "Rhino Ultra web presence."

In accordance with the fourth term, Glidden's Memorialization provided "Glidden will contact all entities, of which it was aware as of May 2, 2008, that offer Glidden's Rhino Ultra adhesive for sale on the internet to customers to recommend removal of all visual and digital references to the Rhino Ultra Marks." Kinsella objected to this wording. Before the magistrate judge, Kinsella argued that the Agreement obligated Glidden to "clean up the internet" within days after May 2 by contacting all entities of which it was aware, or of which it became aware, "that offer for sale, discuss, link to, or reference in any way Glidden's Rhino Ultra adhesive to recommend removal of all visual and digital references to the Rhino Ultra marks, or any variation or derivation thereof."

First, interpreting the Agreement as imposing a future obligation on Glidden to contact all entities of which it ever became aware is unreasonable. The parties' use of future-tense language elsewhere in the Agreement suggests that their omission of future-tense language with regard to Glidden's awareness was intentional. Also, as noted by the court below, the manager of Glidden's Liquid Nails division, Nestor Hernandez, submitted an affidavit stating that Glidden agreed on May 2 "to contact those internet sellers that we were aware of who were selling the Rhino Ultra product online and request that they remove all visual and digital references to Glidden's product."[1] The

_____

[1] Kinsella argues that the magistrate judge and district court impermissibly relied upon extrinsic evidence when determining the ambiguity of the fourth term, specifically the "Rhino Ultra web presence" portion. Ohio's parol evidence rule prohibits extrinsic evidence from being used to "alter, contradict, contest, or vary an integrated written agreement." *Glazer v. Lehaman Bros., Inc.*, 394 F.3d 444, 455 (6th Cir. 2005) (citing *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000)). Although this rule does not apply to the interpretation of the Agreement because it was an oral, not written, contract, Kinsella argues that Ohio law also bars the admission of extrinsic evidence to interpret the meaning of unambiguous oral contract terms. He cites the dissent in *Rulli v. Fan Company* to support his position. 683 N.E.2d at 341. In that case, the dissenting judge stated that when two parties "have orally expressed their intentions to contract in identical words, using the words that each of them consciously intends to use" the agreement cannot be voided by the parties

-9-

magistrate found that this statement accurately reflected his own memory of the discussions and the nature of the Agreement with regard to the term at issue.

Second, we agree that the parties intended "entities" that have "the Rhino Ultra web presence" to encompass only "entities . . . that offer Glidden's Rhino Ultra adhesive for sale on the internet." The magistrate judge found that Hernandez's recollection that, on May 2, "Kinsella raised concerns about the presence of competitors selling Glidden's Rhino Ultra product on the internet," and that Glidden had "agreed to contact those internet sellers that we were aware of who were selling the Rhino Ultra product online," corresponded with his own memory of the parties' discussion. Kinsella's contention that "web presence" is not limited to internet sellers is not reasonable. The district court noted the impracticability of Glidden finding any and all web sites that even reference Rhino Ultra and advising them to remove such references. As also noted by the district court, Kinsella's interpretation is unreasonable in light of the fact that both parties' claims are based on the commercial use of the Rhino trademarks.

An ambiguity exists under Ohio law "where contract language is susceptible to two or more *reasonable* interpretations." *Potti*, 938 F.2d at 647 (emphasis added). A term is not ambiguous merely because two parties offer substantially different interpretations. *See 216 Jamaica Ave., LLC*,

---

asserting different meanings to the language so long as there is only one reasonable interpretation. *Rulli*, 983 N.E.2d at 341 (citation omitted). The judge contended that the *Rulli* court should not admit extrinsic evidence to establish the meaning of an unambiguous contract term, such as the oral term at issue. *Id.* at 342. The judge cited *Shifrin v. Forest City Enter., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992), as the authority for this contention. *Shifrin*, however, does not discuss oral contracts.

We find Kinsella's argument unpersuasive. *Rulli* does not bar the court from considering what was said during settlement negotiations beyond what was transcribed. *See, e.g.*, *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002) ("Terms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'"); *see also Re/Max*, 271 F.3d at 648 (considering the record of post-settlement correspondence in determining meaning of term).

-10-

540 F.3d at 440. We find Kinsella's interpretation of the Agreement's fourth term unreasonable. Consequently, the term is not ambiguous. Because the Agreement was clear and unambiguous, there was an objective meeting of the minds between the parties. An agreement was therefore reached on all material terms, and the settlement may be enforced.

## C.    Memorialization of the Agreement

After the May 2 conference, the parties could not agree upon a written memorialization of the agreement. The record reflects that this was due in large part to Kinsella's general refusal to cooperate. Kinsella responded to Glidden's initial draft memorialization by stating that he would "not accept the notion that we should approve another settlement agreement." Kinsella also argued before both the magistrate judge and the district court that a written memorialization was not an essential term of the May 2 settlement Agreement. He continues to insist, without citing to any law, that "[s]ince the essential terms of the May 2nd Agreement were read into the record by the magistrate's law clerk, the record constitutes the parties understanding of the plain language of the Agreement."

The magistrate judge and district judge both found that the parties agreed to prepare a written memorialization of the Agreement. This determination was not erroneous. The May 2 transcript reflects the parties' agreement to prepare and execute a written memorialization. Before the "outline of the settlement" was read into the record, the magistrate judge stated that "the parties will prepare a written memorialization with greater detail." After the parties assented to the terms articulated by the magistrate's law clerk, Glidden's counsel volunteered to "prepare the initial draft." The magistrate judge determined that the remainder of the exchange between the parties, detailed *supra*, evidenced Kinsella's counsel's implicit understanding of the parties' agreement to prepare a written

-11-

memorialization, and, at the very least, his failure to object to such a memorialization. The district court also found that the transcript supported the magistrate judge's determination.

These facts are similar in many ways to the facts before the Court in *Re/Max*. 271 F.3d 633. In that case, Re/Max and Realty One reached an oral settlement agreement, the general terms of which were stated on the record, and agreed to complete a written settlement agreement within forty-five days. *Id.* at 637-38. The parties, however, failed to prepare a draft of the final agreement. *Id.* at 638. Realty One insisted "that it was 'not necessary to prepare any additional documentation concerning the settlement' because 'the transcript dictated by [the judge] and agreed to by counsel and the parties in court on July 13, 2000, is the complete settlement of the parties.'" *Id.* at 638-39. Based on the plain language of the transcript, the Court found that Realty One was obligated to help prepare a memorialized written expression of the settlement terms and handle the details of the agreement within forty-five days. *Id.* at 646. Because Realty One "stubbornly refused to cooperate," this Court affirmed the district court's determination that Realty One breached the settlement agreement. *Id.* at 647.

Similarly, here, Kinsella agreed to help prepare a written memorialization of the Agreement. Kinsella cannot rely, just as Realty One could not, on the transcript outlining the essential terms of the Agreement to excuse his obligation to execute a written memorialization. Thus, because an agreement was reached on all material terms, and because the parties agreed to memorialize that agreement in writing, we must examine whether the proposed Memorialization is materially different than the oral Agreement. *Id.* at 647-49.

D.     **Language of the Memorialization**

-12-

"The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement." *Re/Max*, 271 F.3d at 646. "When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Id.* (citing *Brock*, 841 F.2d at 154; *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir. 1973)). Furthermore, "[t]he court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154.

Like the defendant in *Re/Max*, Kinsella claims that the terms in the Memorialization are different than those to which he assented on May 2, 2008. The magistrate judge and the district judge both analyzed the Memorialization and found, with minor modification, it was a fair and accurate reflection of the Agreement.

Kinsella, in his briefs before the magistrate judge, did not identify what terms he objected to in Glidden's proposed Memorialization. At the hearing on October 23, 2008, when asked by the magistrate judge what specific additional material terms were contained in the Memorialization, Kinsella complained of the language regarding Glidden's internet obligations and the Memorialization's territorial limitation. In his objection to the magistrate judge's report, Kinsella objected to several additional terms. Before this Court, Kinsella repeatedly asserts that the Memorialization contains additional material terms, but only specifically addresses the time-for-performance requirements. He seems to imply that anything beyond the words recorded on the transcript are additional terms that materially alter the Agreement.

1.      **Time-for-Performance Requirements**

The only additional terms that Kinsella specifically addresses before this Court are the time-for-performance requirements in the Memorialization. Essentially, he argues that it is not reasonable to condition time of performance on the execution of the modified Memorialization. He did not raise this issue before the magistrate judge, but argued before the district court that the time requirements contained in the Memorialization were new terms to which the parties did not agree. The relevant paragraphs provide as follows:

> 1(d) "Within three (3) business days after the Execution Date of this Agreement, Glidden will file a Notice of Express Abandonment . . . ."

> 1(e) "Within three (3) business days after the Execution Date of this Agreement, Glidden will file a Surrender of Registration . . . ."

> 2(a) "Within three (3) business days after the Execution Date of this Agreement, Glidden will withdraw the Oppositions."

> 3(a) "Within three (3) business days after the Execution Date of this Agreement, Glidden shall pay Kinsella one hundred fifty thousand dollars ($150,000)."

> 3(b) "Within three (3) business days after the Execution Date of this Agreement, each party shall file a dismissal of their respective claims in the litigation."

Kinsella argued that because time for performance was not included in the Agreement, a "reasonable time" controls, and that the "reasonable time" clock started ticking on May 2, 2008. The district court found that Kinsella could not "object to the inclusion of performance deadlines" because he did not present any evidence before the magistrate judge that the dates were essential terms not agreed upon by the parties, or that they were unreasonable, and because the magistrate judge "did not consider this argument."[2]

---

[2] In their briefs, neither party addresses the district court's refusal to consider the time-for-performance-requirements issue. This Court has not squarely addressed whether a party may raise new arguments before a district judge that were not presented to the magistrate judge. In *Murr v. United States*, however, the Court indicated that a party's failure to raise an argument before the

This Court's review is limited to issues "presented to and considered by the district court, unless review of an issue is necessary in order to prevent manifest injustice, promote procedural efficiency, or correct clear errors or omissions." *United States v. Markwood*, 48 F.3d 969, 974 (6th Cir. 1995). Because Kinsella failed to raise his argument regarding performance deadlines before the magistrate judge and the district judge declined to consider the argument on that basis, it is not properly before us.[3]

## 2. "Is Aware" and "Rhino Ultra Web Presence"

---

magistrate judge constitutes a waiver. 200 F.3d 895, 902 n.1 (6th Cir. 2000). Other circuits are split regarding this issue. *See Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988) (party is not entitled to review of an argument not raised before the magistrate judge); *United States v. George*, 971 F.2d 1113 (4th Cir. 1992) (district court must address all arguments regardless of whether they were raised before the magistrate judge); *Cupit v. Whitley*, 28 F.3d 532 (5th Cir. 1994) (district court may not consider new arguments absent compelling reasons); *Madol v. Dan Nelson Auto. Group*, 372 F.3d 997 (8th Cir. 2004) (party must present all claims to the magistrate judge to preserve them for review); *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000) (district court has discretion to not consider an argument not presented to the magistrate judge); *Marshall v. Chater*, 75 F.3d 1421 (10th Cir. 1996) (issues not raised before the magistrate judge are deemed waived); *Williams v. McNeil*, 557 F.3d 1287 (11th Cir. 2009) (district court has discretion to not consider an argument not presented to the magistrate judge), *cert. denied*, 129 S.Ct. 2747 (June 1, 2009) (No. 08-1290).

[3] Even if we did review this issue, the May 2, 2008, transcript and the transcript of the October 23, 3008, proceedings before the magistrate judge both support conditioning time of performance on the execution of a written agreement. On May 2, Kinsella's counsel stated that he wanted to finalize a settlement agreement before filing the dismissal. At the hearing to address the terms of settlement, however, Kinsella's counsel argued that Glidden's "obligations were immediate" and not "contingent upon the memorialization of some further agreement of non-essential terms." The magistrate judge responded to this argument by stating that the only reasonable way to interpret the May 2 transcript was that the parties agreed to prepare a written memorialization that would clearly indicate each parties' responsibilities and "when the respective responsibilities were to be accomplished." This memorialization "would effectuate and complete the resolution" prior to filing for dismissal. The magistrate judge reasonably understood that the parties' agreement to "prepare a written memorialization with greater detail" meant that details of how and when the parties would perform their remaining obligations would be determined before performance on those obligations was due.

-15-

As explained *supra*, the Memorialization's provision that "Glidden will contact all entities, of which it was aware as of May 2, 2008, that offer Glidden's Rhino Ultra adhesive for sale on the internet to customers to recommend removal of all visual and digital references to the Rhino Ultra Marks," does not materially differ from the Agreement.

### 3.      Territorial Scope

The parties disputed the territorial scope of the Agreement; Glidden believed it was limited to the United States and Kinsella believed it extended worldwide. The magistrate judge found (1) the parties did not have an agreement as to the territorial scope, (2) territorial scope was not a necessary material term, and (3) the Memorialization should be modified to exclude any language regarding territorial scope. Glidden did not object to this modification. Accordingly, the district court struck the words "to customers in the United States" from paragraph 1(C) of the Memorialization. Later, the district court *sua sponte* determined that the words "in the United States" should also be redacted from paragraph 1(a) of the Memorialization. Neither party has objected to these modifications of the Memorialization.

### 4.      June 30 Deadline

Before the district court, Kinsella objected to the deadline provided by the following term in the Memorialization: "Glidden will cease shipment of all products distributed by Glidden for sale . . . under the Rhino Ultra Marks on or before June 30, 2008." He argued that a reasonable time should control because no specific date was agreed to by the parties on May 2, 2008. Even though the magistrate judge did not consider this issue, the district court addressed it. The district court referenced Hernandez's affidavit, which stated that at the settlement Glidden informed Kinsella that it planned to cease manufacturing its product and had already told its main customers that it should

-16-

stop shipping the product on June 30, 2008. Hernandez further stated that Glidden did stop manufacturing and shipping the Rhino Ultra product on June 30, 3008. The district court also noted that Kinsella did not offer any evidence to the magistrate judge to dispute whether the parties agreed to the June 30 deadline. Based on Hernandez's testimony, the magistrate judge's findings and the absence of evidence presented by Kinsella, the district court essentially found that the June 30 deadline was part of the Agreement.

We also find that the deadline does not materially alter the Agreement. Kinsella has not articulated any material differences between the Agreement and the June 30, 2008, deadline imposed by the modified Memorialization. In fact, Kinsella does not specifically address this issue in his briefs.

**5.       Supercedes and Replaces**

Although he did not complain about paragraph five of the Memorialization before the magistrate judge, Kinsella objected to its inclusion before the district court. Paragraph five provides:

> Entire Understanding. This Agreement and the Exhibit hereto represent the entire agreement and understanding between the Parties regarding the Oppositions and the Litigation, and supercede and replace any and all prior agreements and understandings relating to these matters.

Kinsella argued that he did not agree that any written agreement would replace the oral Agreement. The district court found that "paragraph five simply states Ohio law and does not add an essential term." We agree. Kinsella does not specifically address this issue in his briefs before this Court, nor does he articulate how paragraph five materially differs from the Agreement.

-17-

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision adopting the modified Memorialization.