**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Samuel ROSSE, III, Defendant.**

**No. 2:14–cr–20011–JTF–cgc.**

United States District Court,
W.D. Tennessee,
Western Division.

Signed July 29, 2014.

Jerry R. Kitchen, U.S. Attorney, Jackson, TN, for Plaintiff.

ORDER ADOPTING THE REPORT AND RECOMMENDATION ON DEFENDANT SAMUEL ROSSE'S SECOND MOTION TO DISMISS

JOHN T. FOWLKES, JR., District Judge.

Before the Court is Defendant Samuel Rosse's Second Motion to Dismiss filed on April 11, 2014. (Def.'s Motion, ECF No. 46). On April 28, 2014, the Court referred the motion to the United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b). (Or-

der of Reference, ECF No. 55). On May 28, 2014, the Magistrate Judge conducted an evidentiary hearing on the Motion. After hearing arguments from the parties, the Magistrate Judge ordered the Defendant to file a supplemental brief and allowed time for the Government's response. (Minutes, ECF Nos. 70). On May 30, 2014, Defendant filed a Bench Brief and the Government responded on June 6, 2014. (Def.'s Bench Brief, ECF No. 71; Govt.'s Resp., ECF No. 73). On June 25, 2014, the Magistrate Judge issued her report and recommendation that Defendant's Second Motion to Dismiss be denied. (Report and Recommendation, ECF No. 78). Defendant filed objections to the Magistrate's report and recommendation on July 22, 2014 to which the Government filed a Reply on July 23, 2014. (Objections, ECF No. 95; Reply, ECF No. 101).

For the following reasons, the Court finds the Magistrate's report and recommendation should be adopted and Defendant's Second Motion to Dismiss DENIED.

### FACTUAL HISTORY

The Court adopts the Magistrate Judge's proposed findings of fact as the factual history of this case as well as other factual summaries included in prior Orders issued by this Court.[1] As noted above, the

1. The Court incorporates its most recent factual summation of this case found in the Order Denying Defendant's Second Motion to Produce Grand Jury Testimony entered on July 15, 2014. (Order, ECF No. 71).

2. The Court also referred to the Magistrate Judge for determination, Defendant's First Motion to Produce the Grand Jury Testimony. (First Motion, ECF No. 66, and Order, ECF No. 68). The Magistrate Judge granted in part and denied in part that motion, allowing instead an *in camera* review of the grand jury transcripts. (Motion, ECF No. 66 and, Text Order, ECF. No. 69). After the ruling on the Motion to Produce, Defendant filed a Second

Defendant filed the instant Motion to Dismiss on April 11, 2014, alleging *inter alia*, prosecutorial vindictiveness. The motion was referred to the Magistrate Judge for report and recommendation on April 28, 2014.[2]

### STANDARD OF REVIEW

■ A United States District Court Judge may refer certain dispositive motions, including motions to dismiss indictments, to a United States Magistrate Judge for submission of proposed findings of fact and conclusions of law for disposition by the District Judge pursuant to 28 U.S.C. § 636(b); *U.S. v. Houston*, Case No. 3:13–10–DCRF, 2013 WL 3975405 *1 (E.D.Tenn. July 29, 2013). The District Judge may accept, reject or modify in whole or in part, the Magistrate's proposed findings and recommendations. *U.S. v. Raddatz*, 447 U.S. 667, 673–675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), *reh'g den.*, 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980). See 28 U.S.C. § 636(b)(1)(B).

■ In criminal cases, the District Judge is required to make a *de novo* determination of those portions of a Magistrate's report and recommendation to which specific objections are made regarding the dispositive matters contained the

Motion to Produce the Grand Jury Testimony on July 3, 2014 to which the Government responded on July 9, 2014. (ECF No. 81, Response in Opposition, ECF No. 85). Defendant's Second Motion to Produce was denied by Order of this Court on July 15, 2014. (ECF No. 86). In the interim, the Defendant's Motion for an Extension of Time to file Objections to the Magistrate's report and recommendation was granted, ECF No. 86, allowing Defendant ten additional days from the Court's ruling on the Motion to Produce to file any written objections to the Magistrate's Report and Recommendation.

report and recommendation. *Id.* at 674–675, 100 S.Ct. 2406. While most actions by a Magistrate Judge are reviewed for clear error, dismissal of indictments and motions to suppress evidence are among the motions in criminal matters that are subject to *de novo* review. *U.S. Fidelity and Guarantee Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir.1992).

### ANALYSIS

### I. *The Magistrate's Report and Recommendation*

In her report and recommendation, the Magistrate examined whether Defendant's Second Motion to Dismiss should be granted because of prosecutorial vindictiveness. (Report and Recommendation, ECF No. 78). Defendant asserts the Superseding Indictment should be dismissed because it demonstrates a realistic likelihood of vindictiveness on behalf of the prosecutor(s). Specifically, Defendant contends the Government filed the Superseding Indictment: 1) over one year after his initial arrest; 2) to punish or penalize him for successfully exercising his constitutional rights; and 3) to expose him to harsher penalties by "upping the ante" and adding the conspiracy charge and forfeiture provisions. Defendant asserts that the prosecutor(s)' actions in this case were unreasonable and atypical because the evidence presented to the grand jury that returned the Superseding Indictment could have been presented earlier. He further asserts that forfeiture provisions were rarely added to Superseding Indictments in other similar drug cases previously assigned to the three prosecutors involved in this case. Finally, the Defendant asserts that he has been prejudiced and subjected to further delays,

again in violation of the Speedy Trial Act.[3] (Report and Recommendation, ECF No. 78, pp. 881–82, Defendant's Second Motion, ECF No. 46).

The Magistrate's proposed conclusions of law recommend that Defendant's Second Motion to Dismiss should be denied. In her report and recommendation, the Magistrate concluded that Defendant failed to demonstrate a realistic likelihood of vindictiveness that would justify dismissal of the Superseding Indictment. She indicated that the Defendant failed to satisfy the four requisite elements: 1) an exercise of a protected right; 2) a prosecutorial stake in the exercise of that right; 3) unreasonable prosecutorial conduct; and 4) an intent to punish the defendant because of exercising the protected right. *See generally, U.S. v. Suarez*, 263 F.3d 468, 479 (6th Cir.2001). (Report and Recommendation, ECF No. 78, pp. 882–83). Specifically, the Magistrate's proposed conclusions of law are as follows:

### 1. *The Defendant Exercised His Constitutional Rights*

The Magistrate concluded that Defendant exercised his constitutional right to move for dismissal of the indictment under the Speedy Trial Act in Case No. 12–cr–20029–JTF. Furthermore, Defendant was successful in obtaining bond in the case at hand as well as in 12–cr20029–JTF, even though bond was ultimately revoked by this Court. (*Id.* at 883–84). Nevertheless, the Magistrate found that a presumption of prosecutorial vindictiveness does not exist in this regard. A defendant is expected to exercise his procedural due process right to file motions for bond or motions to dismiss for Speedy Trial violations when

---

**3.** The Magistrate Judge referenced that Defendant also raised an issue of actual vindictiveness in Defendant's Bench Brief, ECF No. 71, ¶ 3, but abandoned said argument during the

Evidentiary Hearing conducted on the Second Motion to Dismiss on May 28, 2014. (Report and Recommendation, ECF No. 78, p. 883 n. 13).

appropriate during a pretrial setting. The filing of such motions, standing alone, is insufficient to establish prosecutorial vindictiveness, especially in the pretrial stage of a case. (Report and Recommendation, ECF No. 78, pp. 883–84).

### 2. A Prosecutorial Stake in the Pretrial Stage of a Criminal Proceeding

The Magistrate's report and recommendation indicated that from the perspective of the government, there is little at stake in the early pre-trial stage of a criminal proceeding. The Magistrate indicated that because the Government's burden is less at the pre-trial stage, in comparison to the post-trial/post-conviction stage, the Government has less of a stake in the outcome of a pretrial motion, making the possibility of vindictiveness far less likely. *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir.1980) (*en banc*). Thus, in the case at hand, the Defendant's bond requests and motions to dismiss do not appear to have triggered a vindictive response from the Government. (Report and Recommendation, ECF No. 78, pp. 884–85).

### 3. Were the Prosecutor(s)' Actions Unreasonable or Vindictive?

The Magistrate determined that AUSA Kitchen's statements regarding the filing of additional counts that would subject Defendant to thirty years imprisonment were not unreasonable or indicative of prosecutorial vindictiveness. (Report and Recommendation, ECF No. 78, pp. 884–88). The Magistrate indicated that the decision whether or not to prosecute and what specific charges to bring before the grand jury is always within the prosecutor's discretion. Similarly, the Magistrate's report and recommendation proposed that the Court reject Defendant's argument that

the prosecutors acted unreasonably, and displayed a clear intent to punish by subjecting him to harsher penalties and a forfeiture of his asserts. (ECF No. 78, pp. 888–90). The Magistrate noted that the Government's filing of a Superseding Indictment that contains an additional charge when based on newly-obtained evidence is insufficient to prove a vindictive prosecution claim. *See Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

### 4. The Speedy Trial Allegations, Unwarranted Delays and Listing of Other Prosecutions

Additionally, the Magistrate recommended that Defendant's Speedy Trial Act claims pertaining to the prior case, particularly the alleged showing of prejudice had been resolved by dismissal, and were inconsequential to the current proceeding. The report and recommendation noted that a new Speedy Trial Clock starts each time the Government re-indicts a Defendant. Furthermore, the Magistrate concluded that the Defendant is precluded from seeking review of these Speedy Trial claims until a final disposition of the current matter, at which time he may then seek appellate review before the Sixth Circuit Court of Appeals.

Regarding Defendant's claims of prosecutorial vindictiveness based on the delays that occurred while Defendant was in transit and awaiting the mental competency evaluations, the Magistrate recommended that those claims be found meritless. *See* 18 U.S.C. §§ 4247 and *U.S. v. Tinklenberg*, 579 F.3d 589, 595 (6th Cir.2009). (Report and Recommendation, ECF No. 78, pp. 891–94).

The Magistrate noted that the test for prosecutorial vindictiveness is whether there is a realistic likelihood of vindictiveness based on the particular factual situa-

tion at hand. Therefore, the Magistrate recommended that the Court find the supplemental listing of other drug cases prosecuted by the three Assistant United States Attorneys involved in both of the *Rosse* cases irrelevant. *U.S. v. McFadyen–Snider,* 590 F.2d 654 (6th Cir.1979). (ECF No. 78, pp. 894–95).

## II. *Defendant's Objections to the Magistrate's Report and Recommendation*

Defendant makes the following objections to the Magistrate's report and recommendation: 1) actual vindictiveness; and 2) a realistic likelihood of vindictiveness on behalf of the Government. (Objections, ECF No. 95, pp. 5–10). The Court will address both objections in turn.[4]

### A. *Actual Vindictiveness Claim*

█ It is difficult to understand Defendant's actual vindictiveness claim, especially when he appeared to have abandoned this claim during the hearing before the Magistrate. Because of this, the Magistrate did not include an actual vindictiveness analysis in her report and recommendation. The Court finds the Magistrate correctly concluded that the actual vindictiveness arguments raised in Defendant's Bench Brief had been abandoned during the evidentiary hearing on May 28, 2014. The Magistrate indicated in her report and recommendation that:

As stated in the text, actual vindictiveness was raised in the Defendant's Bench Brief, DE 71, ¶ 13 but abandoned by counsel during the evidentiary hearing. Further Defendant never present-

ed any objective evidence other than asserting, "Kitchens [sic] intent was clear and the actions that followed.rise to the level of "actual vindictiveness."

(See Report and Recommendation, ECF No. 78, n. 13). The Court agrees. The transcript·of the evidentiary hearing clearly denotes that in response to inquiry from the Magistrate, Defendant asserted he was not pursuing an actual vindictiveness claim but instead, was attempting to introduce evidence of the prosecutors' actions in other cases to meet the unreasonable and intent-to-punish prongs of a reasonable likeliness of vindictiveness claim. (ECF No. 76, pp. 398–399).

The Court is not required to address the merits of an actual vindictiveness claim since that claim was abandoned before the Magistrate Judge. The Sixth Circuit has addressed the issue regarding whether a party may raise new arguments before a district judge that were not presented to the magistrate judge. *Glidden Co. v. Kinsella,* 386 Fed.Appx. 535, 544 n. 2 (6th Cir.2010). In *Glidden,* the Sixth Circuit joined the First, Fifth, Eighth and Tenth Circuits in holding that a party waives an argument if it does not raise it before a magistrate judge. *Id.* Similarly, in a prior ruling, the Sixth Circuit noted that a party's failure to raise an argument before the magistrate judge constitutes waiver. *Murr v. United States,* 200 F.3d 895, 902 n. 1 (6th Cir.2000)(in § 2255 habeas proceeding, absent compelling reasons, parties are not allowed to raise at the district court stage new arguments or issues not presented to the magistrate).[5] The Court

---

4. The Court granted Defendant more time than the fourteen days provided by 28 U.S.C. § 636(b)(1)(C) to file his objections pending the Court's ruling on Defendant's Second Motion to Produce the Grand Jury Testimony entered on July 15, 2014. (Motion for Extension, ECF No. 83, and Order, ECF No. 86)

5. The Circuits are split on this issue. In *U.S. v. George,* 971 F.2d 1113 (4th Cir.1992) (district court must address all arguments regardless of whether they are raised before the magistrate judge); *U.S. v. Howell,* 231 F.3d 615 (9th Cir.2000) (district court has discretion to not consider an argument not present-

finds the Defendant's actual vindictiveness claims, formally raised in his objections to the Magistrate's report and recommendation after abandonment during the evidentiary hearing, are improperly before the Court. *Glidden Co.*, 386 Fed.Appx. at 544 n. 2. However, because of the split in authority, and out of an abundance of caution, the Court will review Defendant's actual vindictiveness claim.

As noted, the Defendant now asserts that he has demonstrated actual vindictiveness of the Government under *United States v. Dupree,* 323 F.3d 480, 489 (6th Cir.2003); *U.S. v. Andrews,* 633 F.2d 449, 456 (6th Cir.1980) and *Hayes v. Cowan,* 547 F.2d 42 (6th Cir.1976), judgment reversed by *Bordenkircher v. Hayes,* 434 U.S. 357, 365, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Defendant contends that the Government continually accused Defense Counsel of lying and perjury. Defendant also argues the Government withheld evidence from a federal judge while openly stating its intention to add charges against Defendant that would result in his imprisonment for thirty years. Defendant contends that because the Prosecutor openly stated before the District Court that it was considering adding additional charges and increasing the possibility of incarceration to thirty years, he has proven actual prosecutorial vindictiveness. The basis for this argument is the colloquy before the undersigned court during the bond appeal hearing on February 5, 2014.[6] Defendant also adds that during the most recent plea negotiations, the Government has displayed further evidence of actual vindictiveness by seeking an increased term of imprisonment based on Defendant's age. (Objec-

tions, ECF No. 95, p. 6; Email Exhibit, ECF No. 95–1). Defendant contends these factors comprise objective evidence of actual prosecutorial vindictiveness. (Objections, ECF No. 95, pp. 4–5). Defendant also argues the Magistrate Judge failed to analyze all of the underlying facts that are critical to a determination of prosecutorial vindictiveness. These arguments have no merit.

■ In order to adequately establish an actual vindictiveness claim, a defendant must produce "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." Thus, the burden placed on a defendant is "onerous" and is "exceedingly difficult" to carry. *Dupree* at 489. In the case at hand, Defendant has failed to carry his burden.

■ The Court finds the Magistrate Judge thoroughly reviewed "all of the pleadings and transcripts" of both cases and conducted an *in camera* review of the grand jury proceedings with the parties' consent. (Report and Recommendation, ECF No. 78, p. 882). Therefore, the Court finds Defendant's arguments regarding the Magistrate's failure to review and analyze critical underlying facts are substantially without merit. Also, the Court finds the Magistrate correctly concluded there was new evidence presented to the Grand Jury which supports the additional charge in the Superseding Indictment. (ECF No. 78, pp. 886–88).

Upon a *de novo* review of the Magistrate's report, the Court again finds she evaluated all of the relevant facts, reviewed and extensively quoted colloquies

---

ed to the magistrate judge); *Williams v. McNeil,* 557 F.3d 1287 (11th Cir.2009) (district court has discretion to not consider an argument not presented to the magistrate judge).

6. Contrary to Defendant's argument, this discussion was addressed in the Magistrate's report and recommendation. (Report and Recommendation, ECF No. 78, pp. 885–86).

from the transcripts, while examining each element of Defendant's claims of vindictiveness. Although, the Magistrate Judge did not evaluate the Defendant's position in terms of actual vindictiveness, the Magistrate correctly found that the methods employed by the Prosecutors regarding what charges to bring and when, a lawful and discretionary function of those assigned to prosecute the case. *Bordenkircher,* 434 U.S. at 357, 98 S.Ct. 663. (Due process is not violated when a prosecutor carries out a threat made during plea negotiations to have an accused re-indicted on more serious charges.)

1. *The Government's Accusation of Perjury and Withholding Information*

 Defendant specifically asserts that the Government accused Defense Counsel, Daniel Hancock, of making false representations in his affidavit which accompanied his objections to the Magistrate's Report and Recommendation entered on October 21, 2013.[7] (ECF No. 95, ¶ 5) The Court finds the reference to this Exhibit of little help in addressing the Motion to Dismiss for prosecutorial vindictiveness. The affidavit from Defense Counsel was offered in support of the First Motion to Dismiss Indictment in the prior case. That issue has been decided by the Court previously and that case dismissed. The Government's criticism of Defense Counsel's affidavit in the prior case adds nothing to Defendant's claim of vindictiveness.

· The Court finds this issue has no bearing on the Magistrate's report and recommendation and was not raised previously in Defendant's Second Motion to Dismiss. (ECF No. 46). The Defendant has referenced a conversation between Mr. Hancock and AUSA Chris Scruggs regarding the Speedy Trial Act. The Defendant asserts that AUSA Scruggs was not forthcoming with the Court by standing silent during the hearing on September 18, 2013, regarding the Speedy Trial implications. (*Id.* at ¶ 6). Again, the Court finds this incident has no bearing on the pending case and whether there was actual prosecutorial vindictiveness.

During the bond review proceedings before this Court on February 5, 2014, and referenced by Defendant, the issue regarding whether Defendant would be treated fairly by the Government arose. (ECF No. 95, p. 3, ¶ 5e). The transcript contains the following discussion:

MR. BENCA: Mr. Kitchen refuses to discuss with me outside of writing, so I have not received any offer in this case.

MR. KITCHEN: Your Honor—

MR. BENCA: To make sure on the record, I'm going to provide the letters that I sent to him at the next hearing, but we need to have a report, but I don't feel, quite candidly I don't think Mr. Kitchen is going to treat Mr. Rosse fair in light of what I've seen happen—

THE COURT: At least as to this consent, the interaction between lawyers and the discussions for settlement or lack thereof, that's—that's you—all's business out in the hallway.

(ECF No. 50, pp. 149–150). The Court has already noted that disagreements among counsel have nothing to do with the proceedings at issue before the Court. Further, the Sixth Circuit has noted that the "vindictive prosecution" doctrine was designed to prevent retaliation against the defendant for the assertion of his protected rights, "not to police the emotions of prosecutors." *U.S. v. Suarez,* 263 F.3d at 482. Similar to *Suarez,* Defendant in this case argues that the prosecutor was out to

---

7. Exhibit to Objections to Magistrate's Report, ECF No. 66–1 in Case No. 12–20229.

get him by accusing his Defense Counsel of lying, adding additional and harsher counts, withholding evidence, and failing to offer a reasonable plea when finding out his age. Although Defense Counsel and the AUSA had some difficult instances, both inside and outside of the courtroom, reportedly leading to the need for written exchanges, the Court finds none of these instances even remotely indicate any level of vindictiveness or wrongdoing.

### 2. The Government's Threat to Add Additional Charges and Increase Punishment

■ The Defendant next objection is that the prosecutor's threat of filing additional charges is objective evidence of actual prosecutorial vindictiveness. (ECF No. 95, p. 7). The Government responds that under *U.S. v. Suarez*, the fact that a Superseding Indictment was brought against the Defendant is not evidence of actual prosecutorial vindictiveness. (ECF No. 101, p. 8). The Government asserts that according to *U.S. v. Andrews*, 633 F.2d at 454, as long as the prosecutor had probable cause to believe the accused committed the offense defined by the statute, the decision whether to prosecute the defendant for that offense rests entirely within the prosecutor's discretion. *See also Bordenkircher*, 434 U.S. at 364, 98 S.Ct. 663. Further, in disputing whether the Government acted with actual vindictiveness by increasing the number of years offered to settle the case during the latest plea negotiations, the Government contends that as long as the defendant is capable of rejecting the prosecutor's offer, there is no element of excessive punishment or retaliation. *Id.* at 363, 98 S.Ct. 663; Gov't Reply, ECF No. 101, p. 9).

In *Bordenkircher*, there was no prosecutorial vindictiveness even when the prosecutor threatened to "up the ante" by bringing a new indictment. *Id.* at 363, 98

S.Ct. 663. The Supreme Court, for the first time, considered an allegation of vindictiveness that arose in a pretrial setting. The Court held that the Due Process Clause of the Fourteenth Amendment did not prohibit a prosecutor from carrying out a threat made during plea negotiations to bring additional charges against an accused that refused to plead guilty to the offense with which he was originally charged. The prosecutor in that case had explicitly told the defendant that if he did not plead guilty and "save the court the inconvenience and necessity of a trial" he would return to the grand jury to obtain an additional charge that would significantly increase the defendant's exposure. The defendant refused to plead guilty and the prosecutor obtained the new indictment. It was undisputed that the additional charge was justified by evidence that was in possession of the prosecutor at the time the original indictment was obtained. It was also not disputed that the prosecutor sought the additional charge because of the accused's refusal to plead guilty to the original charge. Under those facts, the Court found that the prosecutor did not abuse his discretion. *Id.* at 363–364, 98 S.Ct. 663. In this case, the Court agrees with the Magistrate that the Defendant has failed to show actual vindictiveness or even a realistic likelihood of prosecutorial vindictiveness by AUSA's filing new charges.

In addition to the Court's review of each of Defendant's assertions outlined above, the Court has considered Defendant's claims in their totality. Clearly, each of the Defendant's individual claims fall short of what is required to show prosecutorial vindictiveness. However, does the cumulative effect of all alleged instances of abuse amount to prosecutorial vindictiveness? It is this Court's view that, even when all of Defendant's alleged transgres-

sions of the Prosecutors are combined and considered as a whole and as a wide ranging incidence of abuse, Defendant has fallen short of what is required. All that has been shown is that the lawyers representing the Parties don't like each other. Because of that, Defendant continually brings to this Court the disagreements, and cries prosecutorial abuse. However, he has not proven vindictiveness.

## B. Reasonable or Realistic Likelihood of Prosecutorial Vindictiveness Claim

 The Defendant also contends that the Government's handling of this case demonstrate a "reasonable likelihood of prosecutorial vindictiveness." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001); *Goodwin*, 457 U.S. at 373, 102 S.Ct. 2485. Similar to "actual prosecutorial vindictiveness," in order for a defendant to establish a "realistic likelihood of vindictiveness" based on the prosecutor's action, the defendant must establish: 1) he exercised a protected right, 2) the prosecutor has some 'stake' in deterring the petitioner's exercise of his right; 3) the prosecutor's conduct was somehow "unreasonable;" and 4) there was an intent to punish. *Bragan*, 249 F.3d at 482–483. If the first three elements are established, then a presumption arises that there is a realistic likelihood of prosecutorial misconduct. *Suarez*, 263 F.3d at 479. Once a court has found a realistic likelihood of vindictiveness exists, the Government then bears the burden of disproving it or justifying the challenged state action. *Andrews*, 633 F.2d at 456. "[O]nly objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." *Id.*

Defendant objects to the Magistrate's recommendation that he failed to demonstrate a reasonable likelihood of prosecuto-

rial vindictiveness. The Defendant specifically asserts: 1) the Magistrate Judge failed to adequately address whether there was a prosecutorial stake in the pretrial motions; 2) the Magistrate Judge ignored that AUSA Kitchen displayed unreasonable conduct and should have been aware of all of the evidence dated back to May 2012, and 3) the Magistrate Judge failed to address whether AUSA Kitchen attempted to subject the Defendant to harsher penalties.

The Government replies that all of the issues cited in Defendant's objections were thoroughly reviewed and properly addressed by the Magistrate Judge. (ECF No. 101, pp. 9–13). The Government also responds that due process is usually not offended when a prosecutor acquires a superseding indictment that results in the possibility of increased punishment. The Government contends that this principle defeats Defendant's argument that AUSA Kitchen's intention was to punish when he sought the superseding indictment. *Blackledge*, 417 U.S. at 27, 94 S.Ct. 2098, (ECF No. 101, p. 13). In response to Defendant's objections regarding the Magistrate's Speedy Trial finding, the Government merely asserts that Defendant has failed to offer a basis for his objections. (ECF No. 101, p. 14).

### 1. Defendant Exercised a Protected Right

The Magistrate concluded that Defendant exercised a protected right by filing the motions for bond and the motions to dismiss the indictments. There is no objection to this recommended finding.

### 2. Whether the Prosecutor(s) Had A Stake in the Petitioner's Exercise of his Right?

 The Defendant has objected to the Magistrate's determination that the prose-

cutors did not have a "stake" in this matter primarily because Defendant exercised his due process rights during the pretrial proceedings of both cases. Without providing any authority in support, Defendant asserts that Judge Claxton, in failing to analyze the facts of this case, relied on the wrong rule of law. (Objections, ECF No. 95, p. 7).

The Magistrate concluded the Government had no prosecutorial stake in the proceeding when the Defendant exercised his rights in the pretrial setting. The Magistrate concluded that "[i]n this case, because the District Court ultimately held that Defendant would be detained pending trial, there is even less motive for the prosecution to exercise vengeance on Defendant than in *Andrews*." (Report and Recommendation, ECF No. 78, p. 884).

 Courts are indeed required to examine the facts of each case and decide whether the prosecutor had a stake in an outcome, and thereby a reason to deter the exercise of some constitutional right. *Andrews*, 633 F.2d at 454. However, *Andrews* rejected the notion that in every pretrial setting, the prosecutorial stake is so *de minimus* there can never be a realistic likelihood of vindictiveness. *Id.* The Supreme Court cautioned against adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. *United States v. Goodwin*, 457 U.S. 368, 381, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). Further, the determination of a prosecutorial stake is but one factor in proving vindictiveness. *Suarez*, 263 F.3d at 479–480. "[W]hile the timing [of the superseding indictment] certainly does not compel the conclusion that a change in the indictment was a product of vindictiveness, it does make the possibility more likely than would a change at a pretrial stage." *U.S. v. Poole*, 407 F.3d 767, 776 (6th Cir.2005).

The conclusive issue is whether the prosecution is negatively impacted by having to retry a decided question or do over what it thought it had already done correctly. *U.S. v. Roach*, 502 F.3d 425, 444 (6th Cir.2007) *quoting Goodwin*, 457 U.S. at 383, 102 S.Ct. 2485. Additionally, a prosecutorial stake exists where a defendant's post-conviction or post-trial appeal requires the expenditure of additional resources and could ultimately result in the defendant going free. The Court in *Blackledge* noted that a prosecutor may have a considerable stake in deterring appeals from convictions since the prosecutor would have to try the case all over again requiring increased expenditures and prosecutorial resources. *Blackledge*, 417 U.S. at 27–28, 94 S.Ct. 2098. *See also U.S. v. McCreary–Redd*, 407 Fed.Appx. 861, 869 (6th Cir.2010). On the other hand, a prosecutor who loses a bail motion does not retry the case and has not incurred considerable expenditures. Therefore, the Court finds the Magistrate analyzed the facts of this case and correctly found that, at this stage, no perceived prosecutorial stake existed.

### 3. Was the Prosecutor's Conduct Unreasonable?

 Defendant objects to the Magistrate's report and recommendation on the basis that she failed to examine whether the prosecutor's conduct was unreasonable. The Defendant suggests that the Magistrate failed to address that AUSA Kitchen's conduct was unreasonable in the following instances: 1) by failing to address Defense Counsel's alleged false affidavit; 2) withholding certain information from the Court regarding alleged threats against a coconspirator(s); 3) the prosecutor's threat to amend the indictment to add more charges to enhance Defendant's punishment to thirty years, and last, 4) the AUSA's assertion that he was unaware of

certain incriminating facts against the Defendant until investigations in preparation for the detention hearing. (Objections, ECF. No. 95, pp. 8–9).

The Magistrate Judge determined that the prosecutor's decision to seek the superseding indictment, even if evidence of more severe charges was available and known to the Government at the time the original indictment was sought, was not unreasonable. (ECF. No. 78, p. 888). The Magistrate determined that not only does a prosecutor have the right to negotiate a guilty plea but also has the discretion to seek additional charges. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Allegations that AUSA Kitchen's conduct was unreasonable in this case is speculative and without support in the record.

### 4. *Intent to Punish*

■ Defendant objects that the Magistrate Judge failed to address whether AUSA Kitchen's alleged attempts to subject him to harsher penalties satisfied the intent-to-punish prong of a realistic likelihood of vindictiveness claim. The Magistrate Judge concluded that under the applicable guideline range, should Defendant be found guilty of both charges in the superseding indictment, it was probable that the penalties would be merged at sentencing, rendering Defendant's enhanced punishment argument void and without merit. U.S. Sentencing Guidelines Manual § 2D1.1 and § 3D1.2 (2011). (Report and Recommendation, ECF No. 78, pp. 888–90). Furthermore, the Sixth Circuit has clearly ruled that filing a superseding indictment that contains an additional count is insufficient to demonstrate a realistic likelihood of prosecutorial vindictiveness or an intent to punish. *U.S. v. Ewing,* 94–3010, 1994 WL 577055 at *3 (6th Cir.1994). Therefore, the Mag-

istrate Judge correctly indicated that the mere acquisition of a superseding indictment with additional charges based on previously unavailable evidence is unsupportive of a claim of prosecutorial vindictiveness. *Suarez,* 263 F.3d at 480. (Report and Recommendation, ECF No. 78, p. 890). The Court overrules Defendant's objections that Mr. Kitchen's actions in bringing a Superseding Indictment were indicative of his intent to punish and subject Defendant to harsher penalties.

■ Also, Defendant's newly-asserted claim that an intent to punish is evident by the Government's email showing the desire to seek twenty five (25) years of incarceration is also without merit. The Supreme Court has upheld there is no such element of punishment or retaliation during the give-and-take of plea bargaining, as long as, the defendant is able to reject or accept the Government's offer. *Bordenkircher,* 434 U.S. at 363, 98 S.Ct. 663. In the alternative, a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial but may file additional charges if the initial expectation that the defendant would plead guilty to lesser charges proves futile. *Goodwin,* 457 U.S. at 379, 102 S.Ct. 2485.

By reviewing the bond and motion hearing transcripts in both cases, the Magistrate has examined the prosecutor(s)' behavior. Therefore, Defendant's objections in this regard are purely conclusory and unsupported by the record. *Howard v. Secretary of Health and Human Services,* 932 F.2d 505, 509 (6th Cir.1991) and *U.S. v. Walters,* 638 F.2d 947, 951 (6th Cir. 1981). The Court concludes the Magistrate Judge examined all four prongs needed to establish a realistic likelihood of vindictiveness claim, concluding they did not exist in this case. *Bragan,* 249 F.3d at 482–483.

876

## CONCLUSION

After a *de novo* review of the Magistrate's report and recommendation, including Defendant's objections and the Government's reply, the Court adopts the Magistrate's recommendation and finds that Defendant's Second Motion to Dismiss should be **DENIED**.

## REPORT AND RECOMMENDATION ON DEFENDANT SAMUEL ROSSE'S MOTION TO DISMISS

CHARMIANE G. CLAXTON, United States Magistrate Judge.

Before the Court is Defendant Samuel Rosse's Motion to Dismiss filed on April 11, 2014. (Def.'s Motion, D.E. # 46). The Government filed a Response to Defendant's Motion to Dismiss on April 21, 2014 to which Defendant filed a Reply on April 30, 2014. (Resp., D.E. # 52; Def.'s Reply, D.E. # 58). On April 28, 2014, the motion was referred to the United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b). (Order, D.E. # 68). An evidentiary hearing was held on March 28, 2014, and the parties were granted leave to file supplemental pleadings. On May 30, 2014, Defendant filed a Bench Brief and the Government filed its response on June 6, 2014. (Def.'s Bench Brief, D.E. # 71; Govt's Resp., D.E. # 73).

For the following reasons, it is recommended that Defendant's Motion to Dismiss be **DENIED**.

### I. Proposed Findings of Fact

Defendant's history with this Court dates back to September 19, 2012, when he was indicted by a federal grand jury and charged with one count of possession with the intent to distribute more than fifty (50) grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1).[1] The indictment charged:

### COUNT ONE

On or about May 3, 2012, in the Western District of Tennessee, the defendant,

_____SAMUEL A. ROSSE, III_____

did unlawfully, knowingly, and intentionally possess with the intent to distribute more than 50 grams of methamphetamine, a controlled substance as classified by Title 21, United States Code, Section 812 as a Schedule 11 controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1).

On September 20, 2012, Defendant was arrested, advised of the charges and released on a $15,000 appearance bond. (Minute Entry, D.E. # 5–7, Bond, D.E. # 9). The matter was continued on numerous occasions, beginning on October 3, 2012 to allow Defendant time to retain counsel. At the next setting on October 17, 2012, Defendant appeared with counsel, entered a not-guilty plea and was released under his current bond conditions. (Minute Entries, D.E. # 10 and D.E. # 11).

On February 1, 2013, the Defendant, present with counsel, requested a continuance for more time to prepare. Defense counsel indicated that discovery had been completed and he did not anticipate any suppression issues. (Report Date Tr., D.E. # 70). The report date was continued to March 27, 2013. At defense counsel's request, the March 27 report date

---

**1.** Case No. 2:12–cr–20229–JTF; *United States v. Samuel Rosse, III.* Defendant erroneously asserts in the instant motion to dismiss that, "The government originally charged Rosse only with a conspiracy offense." The initial charge was actually possession with the intent to distribute. (See Def. Mot, D.E. # 46, ¶¶ 31 and 36).

was reset to April 26, 2013 to allow Defendant additional time to complete a mental evaluation. (Minute Entries, D.E. # 16 and D.E. # 17, Report Date Tr. D.E. # 71, p. 5).[2] On May 22, 2013, Defendant filed an unopposed motion to continue the report date set for May 23, 2013 due to Defendant's illness and counsel's need for additional time to prepare. The matter was continued to June 19, 2013. (Def.'s Motion, D.E. # 19; Order, D.E. # 20). On June 11, 2013, Defendant filed yet another unopposed motion to continue, stating the parties were negotiating a plea agreement. That motion was denied. (Def.'s Motion, Order, D.E. # 21 and D.E. # 22).

At the July 19, 2013 report date, Defendant was in Houston, Texas seeking medical treatment and a trial date was set for August 19, 2013.[3] (Minute Entry, Setting Notice, D.E. # 27 and D.E. # 28).[4] On August 15, 2013, the Government issued a notice of its intent to use FRE 404(b) evidence of Defendant's prior bad acts to prove his knowledge and/or intent to possess methamphetamine for purposes of distribution. (Govt's Notice of Intent, D.E. # 34). Shortly thereafter, Defendant expressed a desire to enter a change of plea and the hearing was set for August 22, 2013. (Setting Notice, D.E. # 36).

During the scheduled change of plea hearing, Counsel advised the Court that Defendant had been hospitalized for a medical emergency, an "apparent suicide attempt," to which the Government requested that Defendant's bond be revoked. (Minute Entry, D.E. # 37, Tr., ECF. No. 73, p. 5). At the August 26nd status report, Defendant's hospitalization was confirmed and the matter again continued until September 3, 2013.[5] On September 3, 2013, Defendant was reportedly hospitalized in a different facility and the Government indicated it would file a motion to determine Defendant's competency to stand trial. (Minute Entry, D.E. # 42; Govt's Mot. D.E. # 44).

On September 9, 2013, the Defendant appeared with newly retained counsel and the Government filed a motion to remand Defendant into custody for a mental evaluation.[6] (Motion, D.E. # 44). The Court granted the motion, Defendant was taken into custody, and the matter was continued until September 12, 2013 for a report date.[7] (Minute Entry, D.E. # 45; Order, D.E. # 46; Setting Notice, D.E. # 47). On September 12, 2013, Defendant, appearing with new counsel, requested to be released on bond and self-report for the Court-

2. Time was excluded under the Speedy Trial Act until April 12, 2013.

3. The trial date was reset by the Court on August 13, 2013 to August 26, 2013. (D.E. # 33).

4. On August 9, 2013, Defendant filed an unopposed motion to continue the trial date in order to interview additional witnesses for trial. The motion was denied. (Def.'s Motion, D.E. # 31 and Order, D.E. # 32).

5. During this proceeding, the Court advised the parties that a detention hearing would be held pending Mr. Rosse's release from the hospital.

6. Defendant's Motion to Dismiss incorrectly asserts the Government "orally moved to take

Rosse into custody for [a] mental evaluation." (Def.'s Motion, D.E. # 46, ¶ 3, Tr., D.E. # 75, p. 8).

> **Mr. Scruggs:** Well, by way of response Your Honor, I provided Mr. Herrin with a motion under 18 United States Code Section 4241, I believe, requesting the Court to order him to submit to a mental evaluation.

7. During the report date on September 9, 2013, the Court ordered the Defendant remanded to the custody of the U.S. Marshals ruling that no set of conditions would reasonably assure the appearance of the defendant as required or the safety of any other person and the community pursuant to 18 U.S.C. § 3142(g).

ordered mental evaluation.[8] Defendant was remanded while the Court set a bond hearing for September 18, 2013. (Minute Entry, D.E. # 48; Setting Notice, D.E. # 49). At the bond hearing, the District Court ordered the Defendant to be transported to the nearest medical facility for a mental examination to determine his competency to stand trial. (Minute Entry, D.E. # 54; Order of Detention, D.E. # 56, Order, D.E. # 58). A status report was set for November 18, 2013. (Setting Letter, D.E. # 59).

In the interim, on September 17, 2013, Defendant filed a motion to dismiss the indictment based on the Speedy Trial Act. (Def.'s Motion, D.E. # 51 and Brief, D.E. # 52). The District Court referred the motion to dismiss to the undersigned Magistrate Judge for report and recommendation. (Order of Referral, D.E. # 57). On October 7, 2013, a report and recommendation was issued by the undersigned that recommended granting the Defendant's motion to dismiss the indictment without prejudice.[9] (Report and Recommendation; D.E. # 61). On the same day, the Government filed a motion to substitute Assistant U.S. Attorney Jerry Kitchen as lead counsel for the Government in place of AUSA Chris Scruggs. (Motion, D.E. # 62). Further, on October 21, 2013, the Government filed a motion for a hearing on the report and recommendation, noting its in-tention to issue a new complaint and request that Defendant continue the in-custody mental evaluation. (Govt's Motion, D.E. # 63). Additional report dates were held on November 8, 2013 and December 20, 2013 where the Court was advised that Defendant was still housed at the medical facility for evaluation. (Minute Entries, D.E. # 79 and D.E. # 82). The record indicates Defendant was in custody for approximately 126 days in order for the mental evaluation to be completed. A psychological evaluation dated January 28, 2014 was prepared and received by the Court from Dr. Dia Boutwell of the Federal Medical Center in Lexington, Kentucky.

On January 21, 2014, the Defendant was present in court for the Motion to Dismiss Hearing. (Minute Entry, D.E. # 84). The District Court ruled *ore tenus* that the case would be dismissed due to the Speedy Trial Violation and adopted the report and recommendation to dismiss the case without prejudice on the following day. (Order, D.E. # 86). Subsequently, the Government filed an affidavit and criminal complaint on January 21, 2014, charging Defendant with a violation of 21 U.S.C. § 841. The criminal complaint charged that on or about May 3, 2012 in Shelby County, Tennessee:

> Defendant did unlawfully, knowingly, and intentionally possess with intent to distribute, five hundred (500) grams or

---

8. The Government and the Court expressed concerns about Defendant's mental state during the September 12, 2013 proceedings similar to statements offered by prior counsel on August 22, 2013. (Tr., ECF. No. 77 and Tr., D.E. # 73). Further, the Court clarified its concern regarding Defendant's overall physical condition during the Bond Appeal Proceeding:

> THE COURT: I do want to correct you on one thing when you say the court excused him. I don't know that the record says— early on there were some excused—I excused his appearance, if I remember cor-rectly, because he was suffering from shingles.
> . . .
> THE COURT: No, that's not correct, I was very concerned. I'm also very hesitant to issue a warrant for someone who—who, and I think I said this on the record before, who may have been hospitalized for medical or psychological reasons, but I wanted to explore what had happened afterwards. (Tr., ECF. 48, pp. 25–27).

9. Defendant filed his objections on October 21, 2013. (Def.'s Obj.; D.E. # 66).

more of methamphetamine, a Schedule II controlled substance, all in violation of Title 21 United States Code, Section 841)(a)(1).

The affidavit in support of the complaint actually provides that the net weight determined was 676.0 grams of methamphetamine. (Compl., D.E. # 1). A probable cause/detention hearing was set for January 23, 2014 but continued upon motion of the Defendant until January 30, 2014. (Motion, D.E. # 7; Order, D.E. # 8; Minutes D.E. # 12). Also on January 30, 2014, the grand jury returned an indictment against Defendant on January 30, 2014, charging him with one-count of possession with the intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 846. (Indictment, D.E. # 9).[10] A detention hearing was held before another Magistrate Judge and Defendant was ordered released with the same appearance bond and home detention as initially ordered in prior criminal matter with the added condition of electronic monitoring. (Minute Entry, D.E. # 12; Order, D.E. # 14). The indictment in Case No. 14–20011 charges the following:

### INDICTMENT

### COUNT 1

Beginning at the time unknown to the grand jury, but through at least on or about May 3, 2012, in the Western District of Tennessee, the defendant,

**SAMUEL A. ROSSE, III**

did unlawfully, knowingly and intentionally possess with the intent to distribute more than 500 grams of Methamphetamine, classified by Title 21, United States Code, Section 812 as a Schedule II controlled substance as, in violation of

Title 21, United States Code, Section 841(a)(1). All in violation of Title 21, United States Code, Section 846.

Upon appeal by the Government, a bond review hearing was held before the District Court on February 5, 2014. During the hearing, Defendant requested additional time to prepare, Defendant remanded, and the hearing continued to February 18, 2014. (Minute Entries, D.E. # 19 and D.E. # 20). On February 18, 2014, the District Court determined that Defendant is a flight risk and threat to himself and other potential witnesses. Accordingly, the District Court reversed the Magistrate Judge's Order granting bond and ordered Defendant detained pending trial. (Order of Detention, D.E. # 25).

On March 19, 2014, the United States filed a First Superseding Indictment, charging Defendant with two counts-possession with the intent to distribute more than fifty (50) grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute approximately 670.5 grams of methamphetamine, in violation of 21 U.S.C. § 846. (Superseding Indictment, D.E. # 27). The United States further amended the original indictment to add a criminal forfeiture provision allowing a money judgment of $500,000.00 or in the alternative, to substitute prospective assets in that amount that belong to Defendant. (D.E. # 27).

Specifically, the Superseding Indictment charges:

### FIRST SUPERSEDING INDICTMENT

### THE GRAND JURY CHARGES:

### COUNT 1

---

**10.** This case was assigned Criminal Case No. 14–cr–20011–JTF, *United States v. Rosse.*

Beginning at a time unknown to the grand jury, but through at least on or about May 3, 2012, in the Western District of Tennessee, the defendant,

**SAMUEL A. ROSSE, III**

did unlawfully, knowingly and intentionally conspire, combine, confederate and agree together and with other persons both known and unknown to the Grand Jury, to unlawfully, knowingly and intentionally manufacture, possess with the intent to distribute, and to distribute more than 50 grams of Methamphetamine, a Schedule II controlled substance as classified by Title 21, United States Code, Section 812,

All in violation of Title 21, United States Code, Section 846.

### COUNT 2

On or about May 3, 2012, in the Western District of Tennessee, the defendant,

**SAMUEL A. ROSSE, III**

Did unlawfully, knowingly and intentionally possess with the intent to distribute approximately 670.5 grams of Methamphetamine, classified by Title 21, United States Code, Section 812 as a Scheduled II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

The First Superseding indictment adds provisions for criminal forfeiture pursuant to Title 21 U.S.C. § 853(a)(1) and (2) that read:

### CRIMINAL FORFEITURE

1. The allegations contained in Counts 1 and 2 of this indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

2. Pursuant to Title 21, United States Code, Section 853(a)(1) and (2), the defendant,

**SAMUEL A. ROSSE, III**

from his engagement in any or all of the violations alleged in Counts 1 and 2 of this indictment, punishable by imprisonment for more than one year, which counts are re-alleged and incorporated by as if more than fully set forth herein, shall forfeit to the United States all of his interest in: property constituting and derived from any proceeds the defendant obtained, directly or indirectly, as a result of such violations; and property used and intended to be used in any manner or part to commit and to facilitate the commission of such violations. Such property includes, but is not limited to, the following:

a. **Money Judgment:** At least Five Hundred Thousand Dollars ($500,000.00) in U.S. Funds, representing the aggregate of the proceeds of the illegal drug trafficking conspiracy charged in Count 1, for which the defendant is jointly and severally liable;

b. **Currency as follows:**

 i. Sixteen Thousand Two Hundred Four Dollars ($16,204.00) in United States Currency;

 ii. Five Thousand Six Hundred Sixteen Dollars ($5,616.00) in United States Currency;

c. **Vehicles as follows:**

 i. One (1) 2008 Dodge Ram 3500, VIN 3D7MX48A38G123015, with All Appurtenances and Attachments Thereon;

 ii. One (1) 2012 Chevrolet Camaro Coupe VIN 2G1FK1EJ7C9186196,

with All Appurtenances and Attachments Thereon.

3. If any of the property described above, as a result of any action or omission of the defendant in Counts 1 and 2:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of the court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p). Such property includes, but is not limited to, the following:

 i. One (1) Parcel of Real Property Located at 4499 County Road 160, Jonesboro, AR 72404 (Parcel 12–142244–00100), with All Appurtenances and Improvements Thereon;

 ii. One (1) Parcel of Real Property Located at 1902 W. Main St, Blytheville, AR 72315 (Parcel 305–01566–000), with All Appurtenances and Improvements Thereon;

 iii. One (1) Parcel of Real Property Located at 1910 W. Main St. Blytheville, AR 72315 (Parcel 305–01566–001), with All Appurtenances and Improvements Thereon;

As a result, Defendant has filed the instant Motion to Dismiss the First Superseding Indictment on the basis of vindictive prosecution which has been referred for report and recommendation. (Def.'s Motion to Dismiss, D.E. # 46; Order, D.E. # 55). An evidentiary hearing was conducted on May 28, 2014 where the Court took under advisement arguments of counsel pending further supplemental briefing. (Minute Entry, D.E. # 70).

## II. Legal Standard

District Court Judges have the discretion to refer certain dispositive motions to a Magistrate Judge to conduct hearings, including evidentiary hearings, for submission of proposed findings of fact and proposed recommendations for disposition of any motion by the District Judge, including a motion to dismiss the indictment pursuant to 28 U.S.C. § 636(b); *U.S. v. Houston*, Case No. 3:13–10–DCR, 2013 WL 3975405 *1 (E.D.Tenn. July 29, 2013) and *U.S. v. Bozeman*, No. 3:11–cr–129, 2012 WL 1071207 *1 (E.D.Tenn. March 29, 2012).

## III. Analysis

Defendant focuses primarily on prosecutorial vindictiveness in violation of his due process rights as the basis for the motion to dismiss the first superseding indictment. (Def.'s Motion, ECF. 46, ¶ 26). Specifically, Defendant argues the superseding indictment was filed by the Government: 1) after an unreasonable and prejudicial delay in excess of one year; 2) to penalize or punish him for exercising his constitutional rights; and finally, 3) to "up the ante" and expose Defendant to harsher penalties. In support of the motion to dismiss, Defendant requested that the Court rely on the transcripts of all prior proceedings, conduct an *in camera* review of the grand jury proceedings, as well as, allow supplemental briefing regarding other similar drug cases prosecuted within the last five years by all three, former and currently assigned, Assistant United States Attorneys involved in this case. The Court granted Defendant's Motion to Disclose and agreed to an *in camera* re-

view of the grand jury proceedings and allowed the supplemental briefing with directives regarding the other cases proffered by Defendant.[11] (Def.'s Motion ECF. No 66; Minute Entry, D.E. # 67).

In response, the Government counters that: 1) the Assistant U.S. Attorney assigned the case did not have a prosecutorial stake in either of Defendant's pretrial motions, the motion for bail or the Speedy Trial dismissal based on the commonality and frequency of these anticipated procedural motions; 2) the return of the superseding indictment was not unreasonable conduct considering the discovery of new evidence; had the prosecutor not filed the superseding indictment, he would have been derelict in his official prosecutorial duties; and 3) Defendant has not been prejudiced by the additional charges because the penalties are the same under both the original charging document in the closed case and under the superseding indictment in the instant case.[12] (D.E. # 52). In his reply, Defendant reiterated many of the aforementioned claims, namely—Speedy Trial violations, the Government's change in its normal course of prosecuting other similar drug offenses by attaching *lis pendens* to Defendant's real property, and the prejudice suffered by Defendant's continued incarceration in excess of 120 days. *Id.*

Upon a review of all of the pleadings and transcripts in both criminal cases, including the report dates, bond hearings, bond appeal hearing, the grand jury proceedings and the evidentiary hearing relative to this motion, the Court recommends that Defendant's Second Motion to Dismiss should be denied for the following reasons.

### The Standard Regarding Vindictive Prosecution

In order to establish a claim for vindictive prosecution, the Sixth Circuit has held that "[d]ue process prohibits an individual from being punished for exercising a protected statutory or constitutional right." *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *Id.* at 372, 102 S.Ct. 2485. The purpose of the vindictive prosecution doctrine is to prevent prosecutors from retaliating against defendants by charging them with more severe charges as a result of their having asserted a protected right. *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("[D]ue process violation[s] in [vindictive prosecution] cases lay not in the possibility that a defendant might be deterred from the exercise of a legal right ... but rather in the danger that the state might be retaliating against the accused for lawfully attacking his conviction."). *United States v. Andrews,* 633 F.2d 449, 455 (6th Cir.1980) (*en banc*). Although due process is not implicated by all possibilities of increased punishment, it does protect against prosecuto-

---

**11.** Counsel for Defendant was specifically directed during the evidentiary hearing to designate the cases by style, docket entry number, and provide a written summary containing the pertinent information in this regard. (Tr., ECF. 76, p. 35). The Court instructed, "You are going to have to make a detailed reference to what the documents are .... for everything you cite to I need the case number, docket entry, and page ID. That way I will know we are all on the same sheet." However, the exhibit filed contains a listing of the cases with some overall discussion in the context of the supplemental bench brief. (Brief, D.E. # 71, ¶¶ 20–21, Exhibit, D.E. # 71–2).

**12.** The Government maintains the record supports that AUSA Kitchen only learned of the new information while preparing for the February 2014 detention hearings.

rial actions that demonstrate either "actual vindictiveness" or "a realistic likelihood of vindictiveness." *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir.2003). In *Dupree*, the Court noted that a defendant can show actual vindictiveness by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," however such a showing is "exceedingly difficult" to make.[13] *Id.* To prevail on a claim of actual vindictiveness, the Defendant must present evidence that would leave the court firmly convinced that the Government was unconstitutionally motivated. See *United States v. Long*, 531 Fed.Appx. 669, 671 (6th Cir. 2013).

On the other hand, a defendant may demonstrate "a realistic likelihood of vindictiveness" by showing:

(1) an exercise of a protected right;

(2) a prosecutorial stake in the exercise of that right;

(3) unreasonableness of the prosecutor's conduct; and

(4) the intent to punish the defendant for exercising the protected right.

*United States v. Suarez*, 263 F.3d 468, 479 (6th Cir.2001). If the first three elements are present, then a presumption arises that there is a realistic likelihood of prosecutorial vindictiveness to which the Government must then rebut. *Id.*

## IV. Proposed Findings of Law

### 1. *The Exercise of A Protected Right*

First, Defendant argues that because he successfully exercised his constitutional right to move for a dismissal of the prior indictment in Case No. 12–20029 under the Speedy Trial Act, and successfully received bond before the Magistrate Judge in this case, the Government "upped the ante," raising a reasonable likelihood of vindictiveness. (Def.'s Motion, D.E. # 46, ¶ 30).

It is evident that Rosse's exercise of his rights to dismiss based upon a violation of the STA and his successful detention hearing before Judge Vescovo triggered the government's unilateral decisions to add an additional count; to move for a monetary judgment of at least one a half a million dollars; and seeking forfeiture of three (3) piece [sic] of real property along with "all appurtenances and improvements thereon."

The Court finds Defendant did exercise a protected right when he filed the motion to dismiss the former case based on the Speedy Trial violation and when he pursued a bond in the 2014 case. The right to file a pretrial motion to dismiss is a procedural right. *Suarez*, 263 F.3d at 479; *U.S. v. McQuiddy*, 2013 WL 317965 *5 (M.D.Tenn. Jan. 28, 2013). However, there is no presumption of prosecutorial vindictiveness in a pretrial setting. *Goodwin*, 457 U.S. at 372, 102 S.Ct. 2485. A defendant is expected to exercise his procedural rights in a pretrial setting. Therefore, it is unrealistic to assume that a prosecutor's response to such motions would be to penalize and deter. *Id.* at 381,

---

**13.** The Government mentions during the evidentiary hearing, that the Defendant has of late raised an actual vindictiveness claim. (Tr., D.E. # 76). As stated in the text, actual vindictiveness was raised in the Defendant's Bench Brief, D.E. 71, ¶ 13 but abandoned by counsel during the evidentiary hearing. Further, Defendant never presented any objective evidence other than asserting, "Kitchens [sic] intent was clear and the actions that followed

rise to the level of "actual vindictiveness." Defendant simply argues once again that after receiving a speedy trial dismissal, he was reindicted with additional charges. He attempts to demonstrate that in other similar drug cases prosecuted by all three AUSAs involved, the prosecutors were less aggressive and failed to *lis pendens* real property. Tr., DE 76, p. 21.

102 S.Ct. 2485. In fact, in this instance, the Government conceded there was a Speedy Trial Violation in this matter and did not oppose the Defendant's motion to dismiss the indictment in Case No. 12–20229. Defendant acknowledges several times that the Government agreed that a Speedy Trial violation had occurred. (Def.'s Second Motion, D.E. #46, ¶8) Govt. Response to Def.'s First Motion to Dismiss, D.E. #60, Defendant asserts in his Reply:

> 11. The government also filed a motion requesting a hearing on October 21, 2013, [Doc. 63] "the government stated "[it] has no objections to the Report and Recommendation of the Magistrate Judge Claxton," again conceding the speedy trial violation. *Id.*

(Def.'s Reply, D.E. #58, ¶11). Ultimately, the District Court agreed when it dismissed the 2012 case without prejudice.

### 2. *A Prosecutorial Stake in the Exercise of His Protected Rights*

Defendant asserts that the prosecution has a stake in Defendant's exercise of his right to seek dismissal of the 2012 case and in seeking bond in the 2014 case. Defendant's success in initially acquiring a bond in this case does not serve as a trigger to prosecutorial vindictiveness. The Sixth Circuit has held that there is no prosecutorial stake in deterring the exercise of a constitutional right, particularly in a pretrial motion. The Court has noted the prosecutorial interest in deterring a bail motion is not as great as a prosecutor's interest in deterring an appeal from a trial *de novo.* Ultimately, the Court explained that a prosecutor's stake in a pretrial setting is "always so *de minimus* that there can never be a "realistic likelihood of vindictiveness" in a pre-trial setting." *Andrews,* 633 F.2d at 454.

Defendant cites *Andrews* in support of his argument that winning the bond motion caused the Government to add the conspiracy count and the forfeiture provisions in the superseding indictment. However, on appeal, the *en banc* Sixth Circuit panel reversed the district court's ruling in *Andrews* that the conspiracy charge added after the defendants successfully forged a bail appeal demonstrated prosecutorial vindictiveness. *Id.* at 457. A careful reading of *Andrews* indicates that the Sixth Circuit found the application of *per se* appearance of vindictiveness too harsh and one that unduly limits prosecutorial discretion. *Id.* at 456. The Court actually concluded that the proper standard of prosecutorial vindictiveness is not an appearance of vindictiveness but rather a realistic likelihood of vindictiveness. *Id.* at 444.

In this case, because the District Court ultimately held that Defendant would be detained pending trial, there is even less motive for the prosecution to exercise vengeance on Defendant than in *Andrews.* Likewise, Defendant's success in pursuit of dismissal of the 2012 case does not provide sufficient burden on the prosecution to demonstrate prosecutorial vindictiveness. There is less of a burden on the government at the pre-trial stage of a proceeding and therefore, the Government has less of a stake in the outcome as compared to a post-trial, post-conviction proceeding. *United States v. Moon,* 513 F.3d 527, 536 (6th Cir.2008).

### 3. *Unreasonableness of the Prosecutor's Conduct*

Subsequent to dismissal without prejudice under the Speedy Trial Act of the original indictment charging Defendant with possession with the intent to distribute 50 grams of methamphetamine, the Government immediately filed a complaint that led to the grand jury returning a one-

count indictment for possession with the intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. § 846 in the instant case. (Indictment, D.E. # 9).[14] The prosecutor later filed a superseding indictment against Defendant that included a possession with the intent to distribute count and a conspiracy count with forfeiture provisions. (First Superseding Indictment, D.E. # 27).

Defendant argues that "[f]rom the viewpoint of a reasonable person, these added counts with harsher penalties indicate that they were added vindictively, not only, to enhance the prosecutor's ability to gain a conviction but to obtain a longer sentence and take all real property that is owned by Rosse." (Def.'s Motion, D.E. # 46, ¶¶ 32 and 33). In his reply, Defendant asserts that because AUSA Jerry Kitchen indicated he was aware of relevant information regarding threats to harm and to kill a government witness at the bond appeal hearing before Judge Fowlkes on February 5, 2014, he did not receive any new information right before the bond hearing before Magistrate Judge Vescovo as asserted. Defendant contends that during this hearing Kitchen indicated that he would be filing additional counts, including a firearm and obstruction charge that would result in Defendant getting thirty years. (Def.'s Reply, ECF. No. 58, p. 12). In other words, Defendant contends the Government's choice to seek a superseding indictment to add an additional count with harsher penalties is unreasonable and therefore vindictive. The Court recommends that this claim be rejected.

The colloquy during the bond appeal hearing on February 5, 2014 before Judge Fowlkes included:

> **MR. KITCHEN:** Your Honor, as the court is aware I am the second attorney on this matter, so I did play catch up on this matter taking over the case as special assistant AUSA Chris Scruggs was recalled back to the state. And in doing so it was—I have become aware of additional facts in this particular case that, of course, were not presented to the magistrate judge in the detention hearing that I do intend on presenting to this court and hopefully helping the court to render an order detaining the defendant.
>
> . . . .
>
> Except now I would submit to the court that we do have a reason why the defendant was in—was in that capacity and looking for a way to get out of not appearing for the court because that during that same period of time in August the defendant, just prior to admitting himself into these facilities, was also attempting to locate the informant and also threatening the informant and other witnesses in this matter to change their story so that he could get a better deal.
>
> And we would submit that those were the motivating factors that the defendant was under when he made the decisions to check himself into the mental facility, that the defendant went to the residence of the confidential informant, and in front of the confidential informant's father made two basic factors. And I would submit Your Honor, that under the statute 3142(f)(A) and (B), I believe it's (f)(2)(A) and (B), that where the defendant involves a serious risk that person will flee, and I will submit that based on the defendant's actions that he clearly has a reason to flee. And I will go into that a little further as to what the defendant is facing in a sentence based upon his conduct.

---

**14.** This case was assigned Criminal Case No. 14–cr–20011–JTF, *United States v. Rosse.*

. . . .

And based upon that, Your Honor, those—those facts were not made known to Judge Vescovo and basically it was because I didn't put it in front of Judge Vescovo, didn't want necessarily to have to put that information out for the witness' safety, but I wasn't—I guess I was caught offguard that based upon the court's ruling I did not believe it would be necessary, however she granted a bond, so I believe I got to put all of my cards on the table.

. . . .

THE COURT: Before I ask for Mr. Benca to make a statement, Mr. Kitchen, the indications that you made about obstruction of justice, have any charges been brought?

It hasn't been brought to the grand jury has it?

MR. KITCHEN: Your Honor, these—to me these facts have only been made known to me from the last time we were in court. And I have met with—we—my co-counsel, we are in the process of preparing—

THE COURT: Making a determination?

MR. KITCHEN:—preparing a superseding indictment.

I could tell the court that we are planning on a superseding indictment, adding a conspiracy count and adding additional counts.

In that also, I neglected to mention, that during the search of the defendant's warehouse that was located here in Memphis, Tennessee on Channel Drive there were numerous safes that were recovered that were packed full with firearms, that also had money established in those safes.

And we are considering also a 924(c) count based upon the fact that money was being holdup, I guess, as far as being in these safes and being protected by firearms which is the, of course, bread and butter of drug traffickers on that the money is the basis for the—

(Bond Appeal Hr'g Tr., D.E. # 48, pp. 7, 10, 11, 13, 16).

Defendant argues that AUSA Kitchen's conduct was unreasonable because he admitted before the District Judge that he had new information regarding the threats to confidential informants but failed to disclose them to Judge Vescovo during the prior bond hearing. Defendant further asserts that this information may have been new to Mr. Kitchen but was information previously available to the Government because it concerns the same incident leading to his arrest on May 3, 2012. Defendant also argues that the same information was purportedly disclosed in August 2013 by the investigators who testified they provided Mr. Kitchens with the same, prior to the superseding indictment. (Motion to Dismiss, D.E. # 46, ¶ 7, ¶ 25 and ¶ 36). Without further substantiated evidence, the Court recommends that this argument be rejected.

The record reflects that AUSA Jerry Kitchen substituted in for AUSA Chris Scruggs on October 7, 2013. (Notice, D.E. # 62). The Government responds that AUSA Kitchen only had knowledge of the threats a week and a half to two weeks before the detention hearing set on September 18, 2013. (Response, D.E. # 52; Bench Brief, D.E. # 73). Further, the Government refuted this argument by offering that the Government presented new information during the sealed grand jury proceedings. (Tr., D.E. # 76, pp. 27–28). Objective evidence denotes that the prosecutor was not aware of the latter develop-

ments in this case at the time the charges were originally filed. Also, the threats against the alleged co-conspirators would not have been made until after the plea negotiations were underway, coinciding with his voluntary submission to a medical facility for an attempted suicide. The record indicates that Defendant attempted to "hurt himself" based on alleged pressure from his former counsel to enter a plea and perhaps face a ten year sentence supporting the testimony. As a result, it was then discovered, that he subsequently threatened the other co-conspirators. (Tr., D.E. # 76, pp. 9–11).

The Court has reviewed the record including the police report and transcripts of the report dates and detention hearings referenced by the Defendant regarding his "lack of new information" argument. Defendant asserts that based on the police report, Paula and Jeff Culbreath were cooperating with the Government, indications of the Government's knowledge concerning an ongoing conspiracy to distribute methamphetamine. (Police Report, D.E. # 71–1). Assistant United States Attorney Chris Scruggs was the prosecutor who appeared for the Government at the report date on March 27, 2013. (Report Date, Tr., ECF No 71). Based on the *in camera* review of the grand jury proceedings of the prior criminal proceeding, this information was not presented to the grand jury. (Detention Hearing, D.E. # 78). Counsel for the Government during that proceeding was also AUSA Chris Scruggs.

During the detention hearing held before the District Judge on September 18, 2013 in the prior case, Detective David Bailey of the Craighead County Sheriff's Department testified that "shotguns, some—some machine guns, handguns, . . . a large cache of ammunition" were discovered after a search of Defendant's residence. (*Id.* at 14). Other evidence offered included the certified medical records from St. Bernards and Brideway Medical Facilities. (*Id.* at 22). This information has no bearing on the subsequent conspiracy charges filed by AUSA Kitchens.

Finally, a review of bond appeal transcript, confirms that AUSA Kitchen was aware on February 5, 2014 that sometime in August, Defendant was attempting to locate witnesses for exculpatory purposes. (Tr., Bond Appeal, D.E. # 48, p. 10).

**MR. KITCHENS:** . . .

Except now I would submit to the Court that we do have a reason why the defendant was in—was in that capacity and looking for a way to get out of not appearing for court because that during that same period of time in August the defendant, just prior to admitting himself into these facilities, was also attempting to locate the informant and also threatening the informant and other witnesses in this matter to change their story so that he could get a better deal.

. . . .

And in this particular case the defendant went to the home of the confidential informant and the sister of the informant, who both were involved in the conspiracy involved with this defendant, who were both, that I have found out recently becoming involved in this particular case, involved in this drug trafficking offense involved with this defendant, who this defendant went to their residence, to their father's residence seeking out the informant and made statements in front of the father stating that, and this was in August just before all these—all these missing court dates occurred, . . . that he wanted the informant to say that the deputy had planted the dope in his truck to set him up.

(Tr., D.E. # 48, pp. 10–12). During his argument for detention before the District Judge, AUSA Kitchens stated that he had just recently become aware of these facts, the alleged co-conspirators and the alleged threats that had been made by Defendant. There is nothing in the record supporting the fact that the newly designated prosecutor was aware of any information that may have disclosed to the former prosecutor no longer working in the U.S. Attorney's office. Again, the latest developments regarding the co-conspirators did not develop until after AUSA Kitchens was assigned the case.

The argument that AUSA Kitchen violated Defendant's due process rights by suggesting the enhanced indictment was clearly resolved by the Supreme Court's ruling in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The Court noted that as long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute and what charge to actually file or bring before the grand jury is generally entirely within his discretion. *Id.* at 364, 98 S.Ct. 663. The Court found that the prosecutor's desire to induce a guilty plea is an unjustifiable standard that does not impact a subsequent charging decision. In *Bordenkircher*, the defendant failed to enter a guilty plea to the *original indictment* and the prosecutor subsequently re-indicted him on more serious charges. Had the defendant entered the plea, the prosecutor agreed to recommend a sentence of five years in prison. The new indictment charged the defendant under the Kentucky Habitual Criminal Act and subjected him to a mandatory life sentence if he were found guilty. *Id.* at 359, 98 S.Ct. 663. Upon conviction for a principal charge of uttering a forged instrument, the resulting life sentences were upheld on appeal through the state courts. A writ of habeas corpus was filed with and denied by the federal district court. However, the Sixth Circuit *reversed* the district court's finding of prosecutorial vindictiveness. *Id.* at 360, 98 S.Ct. 663. (emphasis added).

Similarly, in *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court prohibited a prosecutor from re-indicting a convicted misdemeanant on a felony charge after the defendant had invoked an appellate remedy since there was a realistic likelihood of vindictiveness. Both decisions actually turned on the premise that the parties have equal bargaining power during the "give and take" of plea negotiations. However, in *Blackledge*, the Court distinguished pretrial and post-conviction conduct that may deter a defendant from exercising his right to appeal or collaterally attack a prior conviction. *Id.* at 28, 94 S.Ct. 2098.

### 4. *Intent to Punish*

Defendant insists that the Government, particularly AUSA Kitchen's efforts to bring a Superseding Indictment were intended to punish Defendant for exercising his due process rights and to subject him to harsher penalties including the forfeiture of his assets, in particular his real property. (D.E. # 71). Defendant asserts, "At the hearing Kitchen announced in open court that he intended on filing additional charges, against Rosse and that he would be looking at 'thirty years.'" (*Id.* at ¶ 12). "Kitchens' intent was clear and the actions that followed rise to the level of 'actual vindictiveness.'" (*Id.* at ¶ 13). Contrary to Defendant's conclusory statements, there is no evidence that AUSA Kitchens or any of the other associated prosecutors displayed any intent to punish Mr. Rosse.

First, the Court must determine whether the superseding indictment exposed Defendant to harsher penalties. The possible

sentencing guideline range associated with the original indictment in Case No. 12–20229, charging a violation of 21 U.S.C. § 841 was:

> [nlt 10 yes., nmt life, nmt $10,000,000 fine or both, nlt 5 yrs. supervised release (or, after a prior drug felony conviction, nlt 20 yrs, nmt life, nmt $20,000,000 fine or both, nlt 10 yrs, supervised release), together with a mandatory special assessment of $100, see 18 U.S.C. Section 3013(a).]

(Indictment, D.E. # 3).

Based on the superseding indictment, the possible penalties that Defendant is exposed to in the current case are:

> ### Count 1
>
> Nlt 10 yrs, nmt life, plus $10,000,000 fine, plus 5 yrs. supervised release 9 or after one prior drug felony conviction nlt 20 yrs, nmt life, plus 10 yrs. supervised release, or after two or more prior felony drug felony [convictions life), together with mandatory special assessment of $100, *see* 18 U.S.C. Section 3013(a).
>
> ### Count 2
>
> Nlt 10 yrs, nmt life, plus $10,000,000 fine, plus 5 yrs. supervised release (or after one prior drug felony conviction nlt 20 yrs., nmt life, plus $20,000,000 fine, plus 10 yrs. supervised release, or after two or more prior felony drug felony convictions life), together with mandatory special assessment of $100, *see* 18 U.S.C. Section 3013(a).

(Superseding Indictment, D.E. # 28–1).

The Government argues in response that Defendant is not exposed to harsher penalties based on the additional conspiracy count in the superseding indictment. (Bench Brief, ECF. No. 73, p. 12). The Government contends, "the additional drug conspiracy charge merely subjects the Defendant to the same penalties he faced under the original drug distribution charge .... and [t]he Defendant would face the same sentencing guideline range due to the fact that the same evidence underlying the § 846 charge would be considered relevant conduct if the Defendant were convicted under the § 841(a)(1) charge. *Id.* During the evidentiary hearing, the Government asserted if Defendant is convicted of both charges, it is likely the convictions would be merged for sentencing purposes. The Government noted that AUSA Kitchens discovered the new information involving the additional co-conspirators during the preparations for the bond hearing, leading to the superseding indictment. (Tr., D.E. # 76, pp. 48–49).

It is noteworthy that separate sentences may be imposed for the conspiracy and the underlying substantive counts. *U.S. v. Blakeney*, 942 F.2d 1001, 1031 (6th Cir. 1991) quoting, *Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) ("[I]t is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end."). "Because of the distinct nature of the conspiracy and the substantive offenses, it is within the district court's discretion to impose an additional sanction for the conspiracy count." *Id.* at 791, 95 S.Ct. 1284. However, convictions related to counts involving the same victim and the same transaction or counts involving the same victim and two or more transactions connected to a common criminal scheme or plan that involve at least 500 grams but no more than 1.5 kg of actual methamphetamine may be grouped together for sentencing purposes. U.S. Sentencing Guidelines Manual § 2D1.1 and § 3D1.2 (2011). Without speculating about the possible sentence the District Judge could impose upon a guilty verdict in this case, it is correct that the penalties could be merged and the potential penal-

ties would not be enhanced by the added conspiracy count. *Id.*

Secondly, the additional count added in the superseding indictment is also insufficient to demonstrate a realistic likelihood of prosecutorial vindictiveness or an intent to punish. See *United States v. Ewing,* No. 94–3010, 1994 WL 577055 at *3 (6th Cir.1994). The facts of *Ewing* similarly involve a defendant who successfully moved for dismissal, also without prejudice, of an indictment charging him with one count of conspiracy to distribute cocaine base due to a Speedy Trial Violation. *Id.* at *1. Upon reindictment, the new charges included one count of conspiracy to distribute cocaine base, a firearms charge, and one count of possession with the intent to distribute cocaine base. On appeal, the Sixth Circuit found that "some repetition of prosecutorial efforts" in the form of a reindictment, did not constitute a sufficient basis to trigger a realistic likelihood of vindictiveness in the pretrial context. *Id.* at *3. The Sixth Circuit has also ruled that mere presence of a superseding indictment with additional charges that is based on previous unavailable evidence is insufficient to be presumptively unreasonable and unsupportive of a claim of vindictive prosecution, particularly where there were multiple criminal acts. *Suarez,* 263 F.3d at 480. The Government had other possible charges it could have pursued, i.e. unlawful possession of firearms, witness tampering, and obstruction of justice, that it chose not to pursue. This factor also dispels the notion of any intent to punish and prosecutorial vindictiveness.

### 5. *Speedy Trial Violations*

Defendant reiterates in this new proceeding, the Speedy Trial claims that pertain to the prior case, specifically that the time between the original arrest in the former case and the currently pending superseding indictment, along with other delays associated with his allegedly unjustifiable mental evaluation and competency examination have been prejudicial. (D.E. # 46, ¶¶ 5–6, 8–10, 12–14, 30). He insists that because he exercised his right to have the prior indictment dismissed based on the Speedy Trial Act, the Government vindictively pursued a subsequent and enhanced superseding indictment.[15] In support, Defendant references the "original motion to dismiss and brief in support alleging a Speedy Trial Act Violation" and the associated proceedings regarding that motion. (Bench Brief, D.E. # 71). He states both cases raise Speedy Trial issues and asks the Court to reconsider the dismissal without prejudice. Curiously, Defendant asserted there were no Speedy Trial issues in the pending proceeding during the associated evidentiary hearing.

> **THE COURT:** Do we have a speedy trial issue in this case?
>
> **MR. BENCA:** Not yet, I don't believe so. I concede that, but without actually going through it—
>
> **THE COURT:** I don't have a speedy trial issue before me to review.
>
> **MR. BENCA:** Well, you understand why I may think that you do, because when I filed my reply, judge said transfer those motions down there. And in our reply motion, we have specifically addressed the second prong of the Speedy Trial Act.
>
> **THE COURT:** In a previous case.
>
> **MR. BENCA:** I understand that. But this is the same charge as to Mr. Rosse. I understand there is a difference because the Speedy Trial Act was granted, but I don't think that forecloses him making continued argu-

---

**15.** As noted previously, the Motion to Dismiss mistakenly asserts that the Government initially charged Rosse with only a conspiracy offense. (Motion, D.E. # 46, ¶ 31).

ments with regard to prejudice filing with the same, exact charges. I'm just making my record as to that.

(Tr., D.E. # 76, pp. 42–43). Defendant's arguments are conflicting. Defendant argues the superseding indictment was enhanced by AUSA Kitchens in order to punish by the Government refiling "the same, exact charges." Yet, the motion to dismiss, the bench brief, and arguments of Defense counsel during the evidentiary hearing, insist the charges were enhanced to punish Defendant. (Tr., D.E. # 76 at p. 43).

It is without question that the indictment in the prior case was dismissed without prejudice based on the Speedy Trial Act by Judge Fowlkes on January 22, 2014. The District Judge conducted a hearing on the Defendant's motion to dismiss and adopted the recommendation of the undersigned. The Court ruled the one hundred seven (107) day delay from Defendant's arraignment in the prior case to the Court's setting of the initial report date on February 1, 2013 was a mere oversight, led to no tactical advantage for the Government, or caused any prejudice to the Defendant. Because dismissal of an indictment without prejudice is a non-appealable interlocutory order, appeal of the ultimate disposition of a subsequent indictment is the only method by which a defendant may seek appellate review of such an order. *U.S. v. Myers*, 666 F.3d 402, 406 (6th Cir.2012); *United States v. Bratcher*, 833 F.2d 69, 73 (6th Cir.1987). To the extent that Defendant seeks review of the Order Dismissing the 2012 Case without prejudice, he must await the final disposition of this matter in order to pursue his

Speedy Trial claims with the Sixth Circuit.[17]

The Court will note that upon dismissal of Case No. 12–20229, the Government filed a complaint on that same day and Defendant was subsequently reindicted by the grand jury on January 30, 2014 in the instant case. A new Speedy Trial Clock starts each time the Government re-arrests or re-indicts the defendant. *Myers*, 666 F.3d at 405. *United States v. Noel*, 488 Fed.Appx. 928, 930 (6th Cir.2012). Therefore, Defendant's argument that the Government sought a superseding indictment with the forfeiture count almost two years after the original charge and subsequent to his successful STA big in the prior case is inconsequential. A new Speedy Trial clock began once the new charges were filed. *Myers*, 666 F.3d at 405.

### 6. *Delays in Transporting/Conducting Mental Evaluation*

Defendant's claims that he has been prejudiced by the detention resulted from an unwarranted psychological examination as well for delays that occurred while he was in transit to and from the medical facilities and by the time that elapsed while the mental evaluation was underway are without consequence. First, during the prior and pending action, counsel for Defendant, the Government, as well as, the Court all expressed concerns for his mental competence. At the report date, held on March 27, 2013 in the prior criminal case, the following exchange occurred:

> **MR. BALLIN:** Your Honor, Mr. Rosse is present.
>
> Since we were last here, Mr. Rosse, at my request has been undergoing some psychological evaluations. And

---

**17.** Local Rule 7.3 provides for the application to move pursuant to Fed.R.Civ.P. 54(b) in civil proceedings for the revision of any interlocutory order made by that Court on any ground set for in subsection (b) only. Motions for interlocutory orders are not otherwise permitted. In criminal cases, no such provision exists.

speaking with the government I believe that they concur that that's something that I needed to do as his defense counsel.

SI spoke with the psychologist yesterday. It's my understanding that there's one more appointment, and then I should be able to tell the court as to whether or not there's any legal psychological defenses.

(Tr., D.E. # 71, pp. 5–6).

Similarly, at the report date held on August 22, 2013, in the same proceeding, the following was stated:

THE COURT: For the record, this is the United States versus Samuel Rosse set today for a change of plea.

So I guess the ultimate question is, where is Mr. Rosse?

MR. BALLIN: As we speak I'm advised that he's at the St. Bernard's Hospital in Arkansas.

Before Your Honor came on the bench, and before you came on the bench I called his wife just to get an update on his condition.

He was not successful in his apparent suicide attempt as referenced in a letter that I'll pass forward that Mr. Scruggs has a copy—copy of.

. . . .

I've always been concerned about my client's peculiarities to the extent that I even referred him to a psychologist for an evaluation.

I spoke with that psychologist after the evaluation, it's months ago, was told that there were identifiable mental health issues but nothing that would affect competency nor sanity issues.

(Tr., D.E. # 73, pp 5–6).

At the suggestion of his former counsel, Defendant offered to submit voluntarily to a mental evaluation. *Id.* As the matter proceeded, Defendant's condition appeared to further deteriorate impeding his ability to appear as scheduled for Court proceedings, to advise his attorney of his whereabouts, or to appropriately assist defense counsel with his representation. The District Court made it crystal clear the ultimate goal was to enable Mr. Rosse to make a competent decision regarding whether he wished to enter a change of plea or proceed to trial.

THE COURT: If you wish to move forward with a detention hearing, I'm fine with that, but just be ready with the proof that you think is necessary.

And understanding that that may be an issue, Mr. Ballin, in light of the allegations that I've heard. And we will decide how best to move forward, whether he has made a complete recovery and wants to change his plea, whether he wants to set it for trial if there is a trial setting, it will be a lot closer, I mean, some other dates may have to be cleared because I'm going to bring it to a close one way, or another as quickly as possible. And then also take up the whole issue of bail. So I intend to deal with it all one way or another on Monday.

(Tr., D.E. # 73, p. 14). The District Court expressly indicated its intent to fast-track the case towards resolution. On the subsequent report date set on August 26, 2013, Defendant was still hospitalized at St. Bernards Hospital in Jonesboro, Arkansas completing his mental evaluation. (Tr., D.E. # 74, p. 6). Finally, the record reflects that Defendant failed to appear at the report date set on September 3, 2013. It was also noted that the staff at St. Bernards had been advised not to speak to counsel and that Defendant had moved to another facility without informing his attorney.

MR. BALLIN: Judge, I'm advised that Mr. Rosse is hospitalized at the Bridgeway, B–R–I–D–G–E–W–A–Y, Hospital. I have a letter to that effect.

**THE COURT:** . . . .

I'm concerned about the notice that you sent me. Okay. And it'—the passed few days I've spoken with Lauren Watkins, this is at St. Bernards, regarding his treatment, spoke freely, however, today upon contact, I was advised that she could not speak with me about Mr. Rosse's status okay. Could not provide me a reason why. (Tr., D.E. # 75, p. 6).

Based on all of these circumstances, once Defendant was finally released from medical care and reported to Court as scheduled on September 9, 2013, the Court ordered Defendant detained and scheduled a detention and motion hearing on the Government's motion for a mental competency evaluation. (Tr., D.E. # 76, p. 12; Order, D.E. # 44).

Pursuant to 18 U.S.C. § 4241, it is appropriate to order a mental competency evaluation under the following circumstances:

**§ 4241 Determination of mental competency to stand trial to undergo postrelease proceedings.**

**(a) Motion to determine competency of defendant—**

. . . . The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

After conducting a detention hearing on September 18, 2013, the Court found that Defendant had missed several court dates without explanation to his counsel or the Court, had exhibited inconsistent and highly questionable behavior, finally concluding that he was a flight risk and in need of a competency evaluation. (Motion, D.E. # 44, Order, D.E. # 58). As such, Defendant was transported by the U.S. Marshals to a nearby medical facility for mental examination and competency evaluation pursuant to 18 U.S.C. § 4241 and 4242.[18] The applicable statute provides:

(b) **Psychiatric or psychological examination—** . . . .,

the court may commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, . . . . For a reasonable period not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241 . . . and not to exceed thirty days under section 4242, . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

The Sixth Circuit has imposed a presumptive limit of ten days for transportation to a facility for a competency hearing. *U.S. v. Turner,* 602 F.3d 778, 782 (6th Cir.2010) citing 18 U.S.C. 3161(h)(1)(F). The Court has also noted that the rules generally limit the period for a defendant's

---

**18.** Motion, D.E. # 44; Court Order, D.E. # 58.

commitment for psychiatric evaluations to thirty days but there are no time limitations imposed for a competency examination in reference to the Speedy Trial Act. *U.S. v. Tinklenberg*, 579 F.3d 589, 595 (6th Cir.2009) and 18 U.S.C. § 4247(b), and 18 U.S.C. § 3161(c)(1). Defendant was remanded for the competency examination on September 18, 2013. (Minute Entry, ECF. No. 54; Order for Psychiatric Exam, D.E. # 58). By letter dated October 16, 2013, the Court was advised that Defendant had arrived at the Federal Medical Facility in Lexington, Kentucky and the facility needed an additional thirty days in order to complete the evaluation, a total of 75 days. The Warden indicated the evaluation and report would be available for the Court no later than on January 17, 2014. Accordingly, the report indicated that the evaluation was conducted by the facility between the period of October 8, 2013 through December 16, 2013. Defendant made his first appearance in court after completion of the competence examination on January 21, 2014. (Minute Entry, D.E. # 84). The Assistant United States Attorneys, do not engage in the transportation or placement of defendants in medical facilities, and therefore, cannot be held accountable for acts or unforeseen delays in this regard. *Turner*, 602 F.3d at 785.

### 7. *Grand Jury Information and Practice in other Cases*

Defendant argued that a review of the grand jury proceedings in both matters would confirm whether there has been prosecutorial vindictiveness in this case and filed a Motion to Disclose.[19] (Motion, D.E. # 66). Counsel insists that all of the circumstances surrounding the superseding indictment are based on the same evidence the Government possessed upon

Defendant's initial arrest in May 2012. Oddly, during the evidentiary hearing, Counsel for the Defense asserted, "[the Government] probably added different facts and the grand jury got to hear different facts, because they came back with a different indictment." (Tr., D.E. # 76, p. 31). Nevertheless, the Government consented to an *in camera* review of the grand jury proceedings. The motion was granted *ore tenus* during the evidentiary hearing on May 28, 2014. (Text Order, D.E. # 69).

In particular, the Government stated:

> **MR. FRENCH:** I understand. But I will say in the motion they say their entire argument hinges on whether the testimony presented to the grand jury on the three separate occasions was the same or different. If it was different, they can't show vindictiveness. If the same, they alleged—
>
> I am prepared to let this Court for purposes of this motion view the grand jury testimony in camera if they are okay with that to see whether the United States presented different testimony to the March 19 grand jury that is superseding what it had in its possession in the previous two times.

The Sixth Circuit has stated that the "General Rule of Secrecy' that normally prohibits disclosure of matters occurring before the grand juries . . . . reflects a 'strong' and 'long-established policy' from which departures are permitted . . . . only in cases of 'compelling necessity' . . ." *In re Grand Jury Proceedings*, 841 F.2d 1264, 1268 (6th Cir.1988). Compelling necessity allows "for the disclosure of grand jury materials in situations where there is

---

**19.** The District Court has also referred the Motion to Disclose to the undersigned Magistrate Judge. (Order, ECF No. 68).

proof that without access to the grand jury materials a litigant's position would be greatly prejudiced or an injustice would be done." *U.S. v. LaDeau,* No. 3:10–cr–00242–1, 2012 WL 1640746, *10 (M.D.Tenn. May 9, 2012), Recons. Den., *U.S. v. LaDeau,* 2012 WL 5838125 (M.D.Tenn. Nov. 15, 2012), aff'd. *U.S. v. LaDeau,* 734 F.3d 561 (6th Cir.2013); See Fed.R.Crim.P. 6(e)(2) and Fed.R.Crim.P. 6(E)(ii). Parties seeking grand jury transcripts under Rule 6 must structure the request to only cover materials that will avoid a possible injustice in another judicial proceeding. *Id.,* quoting *United States v. Sells Eng'g. Inc.,* 463 U.S. 418, 443, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983). Moreover, the fact that grand jury indictments are presumed valid is a well-established principle. *United States v. Toatley,* 2 Fed.Appx. 438, 441–42 (6th Cir.2001). The law is designed to limit a trial court's ability to dismiss indictments to instances where it is clearly established that a particular violation substantially influenced the grand jury's decision to indict. *Id.* at 442.

In this instance, an *in camera review* was conducted of the grand jury proceedings. After review, the Court concludes that new information was presented to the March 2014 grand jury, some of which was developed since the September 2012 grand jury empanelment.

Finally, the Court allowed Defendant to supplement his pleadings and refer to cases he offered as potential exhibits during the evidentiary hearing on May 28, 2014. Counsel for the Defendant argued the prosecutorial strategies of these three Assistant United States Attorneys during the past five years in similar drug cases having superseding indictments demonstrates prejudice and prosecutorial vindictiveness. The Court requested that defense counsel summarize his findings in those cases and the evidence he wished

the Court to consider in its report and recommendation. The Court has conducted a cursory review of the various cases offered by Defendant and finds those cases irrelevant in this proceeding regarding a realistic likelihood of prosecutorial vindictiveness or misconduct. The test for prosecutorial vindictiveness is whether there exists a realistic likelihood of vindictiveness in the particular factual situation presented. *Andrews,* 633 F.2d at 453. Each case turns on its own unique facts and only a full review of that particular case is relevant to determine whether a constitutional violation has occurred. *Byrd v. Collins,* 209 F.3d 486, 530 (6th Cir.2000). As noted in *Andrews,* other appellate courts have similarly addressed vindictiveness questions on a case-by-case basis. *Id.* at n. 4; See *United States v. Jamison,* 505 F.2d 407(D.C.Cir.1974), *Lovett v. Butterworth,* 610 F.2d 1002 (1st Cir.1979); *cert. denied,* 447 U.S. 935, 100 S.Ct. 3038, 65 L.Ed.2d 1130 (1980); *United States v. Ricard,* 563 F.2d 45 (2d Cir. 1977); *United States v. Johnson,* 537 F.2d 1170 (4th Cir.1976); *United States v. Partyka,* 561 F.2d 118 (8th Cir.1977); *United States v. McFadyen–Snider,* 590 F.2d 654 (6th Cir.1979).

Upon a review of all of the pleadings and transcripts from the records of both cases, along with an *in camera* review of the grand jury proceedings and the demonstrative case listing, the undersigned recommends that the evidence does not demonstrate prosecutorial vindictiveness and recommends that Defendant's Motion to Dismiss be **DENIED.**